# JANUARY TERM, 1918.*

### MILLEN v. POTTER.

**1. EVIDENCE—MATERIALITY.**

On a bill for an accounting and the appointment of a receiver, what occurred at an accounting under a former decree was wholly irrelevant; proof of material facts, if any, being all that was necessary to be offered.

**2. JUDGMENT—RES JUDICATA—PRIOR DECREE—BAR.**

The court below properly dismissed plaintiffs' bill where it was directed fundamentally to the same controversy and grievances and the material allegations were an attempt to retry issues disposed of in a decree entered on a former hearing.

**3. RECEIVERS—INSOLVENCY—CORPORATIONS.**

Where there was no allegation or showing that the corporation was insolvent, that it failed to meet its obligations, was run at a loss, was neglected, or its business mismanaged by its officers, *held*, to support the finding of the court below that no cause for appointment of a receiver was disclosed.

Appeal from Washtenaw; Kinne, J. Submitted October 10, 1917. (Docket No. 79.) Decided March 28, 1918.

Bill by Homer C. Millen and another against Nathan S. Potter and others for an accounting and the appointment of a receiver for defendant Michigan Portland Cement Company. From a decree dismissing the bill, plaintiffs appeal. Affirmed.

*A. F. Freeman* (*F. M. Freeman,* of counsel), for plaintiffs.

*Potter & De Land* (*Wilson & Cobb* and *Cavanaugh & Burke,* of counsel), for defendants.

STEERE, J. This litigation is supplemental to and in

a large degree a repetition of the controversy between these parties reviewed and decided in *Millen* v. *Potter*, 190 Mich. 262, affirming a decree of the Washtenaw county circuit court in chancery, to which reference may be made for an understanding of the nature of the litigation and a history of the case up to that time. That opinion was handed down on March 30, 1916, and rehearing denied on April 21, 1916. This suit was begun on July 27, 1916.

The rights established by that decree entitled plaintiffs to a certain amount of stock in the Michigan Portland Cement Co., to be transferred and delivered within 90 days, or, at the option of defendants, paid for at par, and an accounting was granted as the circuit court might direct if plaintiffs desired to make application therefor.

Nathan S. Potter, who was president of the defendant cement company and had financed it, was the active and aggressive defendant in that case, as in this, the others named being his sons and daughter who are stockholders. He made vigorous denial of the contract by which the court held that he had obligated himself and the corporation he promoted, and we are told by plaintiffs' counsel at great length, both as a witness in the record and with wide range of derogatory adjectives in his brief, of Potter's resort to the recognized prerogative of an unsuccessful litigant when other measures are exhausted. This and abundant other criminations and recriminations which cumber and amplify the record are foreign to the real merits of the case and call for no discussion or consideration except as Potter's proclamations synchronized with his acts in apparent defiance of the mandates of the trial court, for which the court awarded costs against him, while decreeing in his favor on the merits of the controversy as it developed after he abandoned his obstructive attitude and followed the advice of his counsel. Of this the court stated that

"the conduct of the defendant Potter can only be understood on the theory that he was a law unto himself, and was at perfect liberty to repudiate the natural conclusions in the 'former case"; but finds that later the obstructions he had interposed against the mandates of the decree were "entirely removed" and the decree complied with. Just before expiration of the prescribed 90 days the stock decreed to plaintiffs was transferred on the records of the corporation and the stock certificates delivered as directed, and pursuant to the accounting applied for by plaintiffs and ordered by the court defendants "opened fully their books and have not concealed aught from the plaintiffs," and their counsel states in his brief that at the last hearing before the commissioner "defendants were quite submissive and quite helpful to the inquiry." Several hearings upon the accounting were had during the month of July, with full opportunity given plaintiffs and their counsel to inspect, and interrogate defendants as to all books, records, files and data of the corporation, but during that month and before concluding the accounting plaintiffs filed this bill. On the hearing of this case plaintiffs' counsel testified that the accounting was not a "completed affair"; that when opposing counsel wrote him in regard to it he "was away out West then," occupied with other important business, but when he had time he intended to "finish it," saying further in the cross-examination:

"I did make the remark there openly and repeat it, that I did not have time to go through the mass and set of books that I knew existed about the affair and that I did not believe I would spend any more time to do it personally. I would look over what somebody else might bring to me. I expected the data to be given to me—the data I was asking for in the notice— the notice I was going to give."

Under such a condition of affairs, what occurred at

the unfinished accounting under the former decree was wholly irrelevant and no legitimate purpose could be served by the detailed testimony introduced as to trouble between the parties over that accounting, which the court on plaintiffs' insistence admitted, but rightly held to be immaterial.

If, as we infer, it was plaintiffs' theory that material facts before unknown to them were discovered in that partial accounting which authorized the filing of the second bill on distinct allegations not involved in the previous litigation, entitling them to other or further relief, the material thing was proof of those facts, not how it was secured.

It was urged by defendants before the trial court, as here, that this suit is in its legal aspects but a repetition of the former, re-presenting in substance the issues there adjudicated, except application for appointment of a receiver, and this was the intimated view of the trial court when certain lines of inquiry upon subjects apparently disposed of in the former case was taken up by plaintiffs' counsel, who, however, urged that if allowed to go fully into those matters as he proposed "brilliant equities" would be disclosed, of which he states:

"Digging, and digging deeply, and tirelessly, was and now is required, but when such is done the research brings forth abounding equities, clear as crystals."

Although confessing inability to apprehend how the testimony proposed would develop as admissible, or "to follow the solicitor for plaintiffs in his theories of the present cause," the court decided to adopt in effect the old chancery practice, when taking testimony in open court, and opened the door for what plaintiffs desired, in connection with which, while interposing the objection of former adjudication, defendants' counsel stated:

"I want this court to tell me what he wants for the purpose of reaching his conclusion upon the allegations of this bill and I will bring them in. I have no disposition to keep anything out of the case."

Books, records and other data relating to the affairs of the corporation were then produced as called for or suggested by counsel until, in complaining of the trial judge having filed his opinion "before the sound and echoes of the case had died away," plaintiffs' counsel states that "voluminous data, figures and records had, in upwards of a week's hearing, been massed, of such amount and volume that no one could understandingly travel through in any one short session of consideration." It, however, scarcely follows from a prompt decision of the case that the court devoted but one short session to consideration of those exhibits, in view of the hearing then concluded having lasted upwards of a week and litigation between these parties over this cement plant had then been progressing in, or on appeal from, that court for over two years with a previous protracted trial where much documentary evidence was introduced, the record of which as brought to this court consisted of 875 printed pages.

A comparison of the two bills of complaint is convincing to us as it was to the trial court that they are fundamentally directed to the same controversy and grievances. The material allegations of this bill are in essentials an attempt to retry issues touching the manner of organizing and financing the cement company, attacked at great length in the former suit as in violation of the agreement of the parties relative to the organization, while claiming and asking for a specified number of shares of stock in the original corporation as plaintiffs' equitable right, of which this court said:

"The complainants have assented to these changes

by demanding their proportion of the common stock in the company as organized, and by so doing some questions discussed in the briefs of counsel are rendered unimportant."

In the present case the conduct of Potter in the organization and financing of the cement company is again attacked and the court asked that he, with the corporation that he organized, be compelled to right certain alleged wrongs done plaintiffs in that connection. In the former case it was asked that the corporation "be reformed or so that its articles of incorporation be so amended that they will conform to the statute law of this State." In this case it is asked, and strenuously argued, that a particular contract between Potter and the corporation, providing for the issue to him of $200,000 of its mortgage bonds for property transferred to it, real, personal and mixed with "the cement machinery and buildings that have been added thereto by the party of the first part," be declared void, and that certain minutes of stockholders' meetings relating to such transaction "be expunged from the records," while in the former bill it was asked that if a mortgage for $200,000 had been given by the corporation "against its properties and assets and funds" that the same be canceled and discharged. In the former case it was asked that Potter be compelled to surrender certain stock to the corporation, while here it is asked that a receiver be appointed, amongst other things, for the purpose of bringing suit to recover from Potter the value of certain stock of the corporation.

Under the former decree plaintiffs are entitled to an accounting and one was ordered upon their application. That, we are informed by plaintiffs' counsel, is "not a completed affair yet." It is a supplemental part of the other case, yet under the direction and control of the trial court and irrelevant to this suit.

No grounds are shown for the appointment of a receiver at this time. The bill does not allege insolvency of the corporation, nor that it fails to meet its obligations, is run at a loss, is neglected or its business mismanaged by its officers.

The affairs of the company, financial and otherwise, were fully gone into on the hearing with all books, records, reports, computations of cost to produce cement, statements of account, etc., before the trial judge who both saw the witnesses and listened to their testimony as it developed, on occasion making inquiry himself as to some matters connected with the cost and conduct of the business. He found no cause for appointment of a receiver was disclosed. After a careful study of the exhaustive testimony along that line, review of which would be of no general interest, we find no occasion to disturb that conclusion.

Plaintiffs applied to the court in the former case to compel recognition as stockholders in this corporation as organized and the issue to them of a certain amount of stock in it. Other relief which they asked for, not in harmony with recognition of its organization, was not granted. The material allegations of the present bill and relief asked are in substance an attack upon the promotion, organization and financing of the corporation in which they in the former case demanded, and accepted, stock, are embodied in the former bill and disposed of in the decision of that case. If in the conduct and management of the corporation as organized their rights as stockholders are denied or any of its officers violate their duties to it as such against plaintiffs' interests they have redress in a proper proceeding.

The decree is affirmed, with costs to defendants.

OSTRANDER, C. J., and BIRD, MOORE, BROOKE, FELLOWS, STONE, and KUHN, JJ., concurred.