[No. 18950. Department Two. April 3, 1925.]

FIRST NATIONAL BANK OF SEATTLE, *Appellant*, v. E. R. HESSELL *et al.*, *Respondents*.[1]

PRINCIPAL AND AGENT (35)—POWERS OF AGENT—AUTHORITY TO COLLECT NOTE. A bank is shown to have authority to collect a note as agent for another bank which was the holder, although the note was not in the agent's possession at the time of the payment, where the note was payable at the agent bank, it was executed there, and it was the custom for the agent to collect interest and payments, issue renewals and sometimes indorse the same as re-discount paper, and give credit on re-assignment to customers.

SAME (62)—AUTHORITY OF AGENT—RATIFICATION—ESTOPPEL. In such a case, the holder of the note is estopped to question the agent's authority to collect the note where it had ratified previous renewals made by the agent, and, having possession it failed to present the note for payment on its due date; and had it done so, an accommodation maker, who paid it before it was due, could have protected himself by recourse to the money paid and on deposit with the agent bank prior to its insolvency.

Appeal from a judgment of the superior court for Franklin county, Truax, J., entered June 20, 1924, upon findings in favor of the defendants, in an action on a promissory note, tried to the court. Affirmed.

*Chadwick, McMicken, Ramsey & Rupp,* and *J. E. Peterson,* for appellant.

*Chas. W. Johnson,* for respondents.

MACKINTOSH, J.—Suit on a promissory note. The facts can be summarized from the trial court's findings, as follows: That the appellant is a bank doing

[1] Reported in 234 Pac. 662.

business in Seattle; that the Farmers State Bank, in 1920, and 1921, up to November 8 of the latter year, was doing business in Connell, Washington, on which date it failed; that on December 29, 1920, the respondents made a promissory note in the sum of $2,600, payable to the Farmers bank ninety days after date; that this note was indorsed by the Farmers bank and delivered to the appellant as re-discount paper; that the respondents delivered to the Farmers bank several notes of other parties as collateral to their note; that on January 26, 1921, one of these notes in the sum of $152 was paid to the Farmers bank and the amount thereof was credited by appellant on the back of respondents' note; that on February 11, 1921, the respondents paid to the Farmers bank the sum of $160.84 to be applied on their note, and that on February 14 the appellant indorsed this credit on the back of respondents' note; that on March 28, 1921, the respondents owed a balance on the $2,600 note of $2,287.16, and that on that day the respondents went to the Farmers bank and executed and delivered a renewal note for the sum of $2,287.16, payable six months after date, which is the note sued on in this action; that on March 30, 1921, the renewal note was duly indorsed by the Farmers bank and delivered to the appellant; that, at the time the respondents executed the renewal note, the Farmers bank delivered to respondents a duplicate copy of the original $2,600 note, bearing this indorsement: "Renewed March 28, 1921," and promised respondents that the original $2,600 note would be returned to them in a few days; that on April 1, 1921, the note was duly returned to the respondents by the cashier of the Farmers bank; that, before the note in suit was due, the respondent H. F. Hessell, on August 24, 1921, who was an accommodation maker, went to the Farmers bank and paid the note in the

sum of $2,287.16, at which time he was given a du-
plicate copy of the note which was stamped "paid,"
and was told by the cashier of the bank that the
original note would be delivered to him in a few days,
as had been done in the former transaction; that, at
the time of paying the note in suit, the respondents
knew that the Farmers bank did not have the note,
and did not demand the surrender thereof before or
simultaneously with the making of the payment; that
the note became due according to its terms on Sep-
tember 29, 1921, at the Farmers bank; that, at that
time, the money for the satisfaction of the note had
been paid by respondents, and the money remained on
deposit in the Farmers bank up to the time of its
failure on November 8 following; that at no time
between March 28, 1921, and November 29, 1921, did
the appellant bank notify the respondents that the
appellant was the owner and holder of the note, and
that if the note had been presented at the place desig-
nated thereon for payment on its due date as pro-
vided in the note, the appellant would have found that
the money had been already paid to the Farmers bank
and received the money, or respondents would have
been given the chance to protect themselves as against
the Farmers bank to which it made the payment; that
no part of the sum received on August 24, 1921, by the
Farmers bank was ever received by the appellant; that
the appellant took the notes from the Farmers bank
as re-discount paper, under a system which had for
sometime been in vogue between the two banks, by
which the Farmers bank would assign and indorse to
the appellant notes of its local customers, the appel-
lant receiving and accepting the notes and allowing
the Farmers bank credit on the appellant's books for
the full amount thereof; that in some cases, if the
note were not paid when due, the appellant, upon in-

structions from the Farmers bank, would charge the notes back to the Farmers bank, and in other cases the appellant would request the Farmers bank to collect the notes from the makers.

The court concluded from these findings that the Farmers bank was the agent of the appellant with full authority to collect the note, and that even though the agency might not have been directly conferred upon the Farmers bank, the conduct of appellant, at the time of the renewal of the original note, in accepting and receiving the renewal amounted to a ratification and approval of the acts of the Farmers bank, and that the appellant is now estopped to say that the Farmers bank was not the appellant's agent for handling and collecting this note. From judgment against the appellant, it has appealed.

It is, of course, the law that the fact that a note is made payable at a certain designated bank does not make that bank the agent of the holder of the note to receive payment, but the fact that the note was made payable at the Farmers bank, taken in connection with the appellant's course of conduct in regard to this and other notes, were all circumstances such as warranted the trial court in saying that the Farmers bank was the agent of the appellant to make collection, and that much of this conduct, even assuming that the respondents had been acquainted with the fact that appellant was the holder of the note, was calculated to induce the belief that the Farmers bank was the appellant's agent and to justify them in this belief.

The trial court was also correct in holding that the appellant's action in allowing the Farmers bank to accept payments on the $2,600 note before the note became due, and in permitting the Farmers bank to procure a renewal and accepting a renewal note in lieu of the original note, and in failing to notify the

respondents, the makers of the note, that the appellant was the owner and holder of it, and in failing and neglecting to present the same for payment at the time stipulated for payment, would result, on account of the failure of the Farmers bank, in depriving the respondents of any opportunity to protect themselves after having made the payment to the Farmers bank, and would raise an equitable estoppel against the appellant seeking a second payment from the respondents on their obligation.

There can be no quarrel with the general principles of law contended for by the appellant in this case. As we have already said, the fact that the note was made payable at a certain place is immaterial and does not prove agency, and it is also true that, generally speaking, a person is not justified in paying the note unless the note is presented at the place of payment and is capable of being delivered to the one paying upon his making the payment, and that a payor of the note, although he does not know of its transfer, is not protected by paying to the payee who has sold and indorsed the note to someone else; that, when payment is made to a person not having possession of the instrument, the burden is upon the payor to show that the person whom he paid was authorized to receive payment for the real owner, and that the duty is also upon him to show that the money actually reached the owner's hands, and that even authority to collect interest does not give authority to collect the principle.

These rules of law all must bow, however, to the facts, and where the holder or owner of a negotiable instrument appoints someone to make collection for him, the person paying to such agent is protected, although the agent may not have the instrument in his possession at the time of payment. The authority of the agent to receive payment need not be established

by express and direct evidence, but may be established by circumstances which show with reasonable certainty that the agency exists. All the facts of this case were such that they reasonably created the belief that the Farmers bank was the appellant's agent. The situation here is very comparable to that discussed by the California court in *Quinn v. Dresbach*, 75 Cal. 159, 16 Pac. 762, as disclosed by the following:

"The plaintiff paid the amount of the note to one Treadwell, who appropriated the money to his own use, and the question is whether Treadwell was the agent of the payee. Treadwell was not the actual agent of the payee in the matter. It is true that the plaintiff testifies that he was instructed by the payee to pay to Treadwell. But the payee denies this, and, in view of the rule in cases of a substantial conflict in the evidence, it must be assumed that there was no actual agency. Then, was there an ostensible agency? The facts as shown by uncontradicted evidence are as follows: The land which is the subject of the deed of trust was sold by the defendant Haneke to the plaintiff. The plaintiff gave his promissory note for $800, and assumed the payment of an outstanding indebtedness secured upon the property. Neither of these obligations having been met, the defendant Haneke placed the matter in the hands of Treadwell, who was an attorney at law, residing in Yolo county, where the property is situated, and where the plaintiff resided. The result of Treadwell's operations was the advance by Haneke of money to pay off the outstanding indebtedness, and the taking of a new note from plaintiff covering the amount of the former note and the amount advanced by Haneke. So far, there is no kind of doubt but that Treadwell was the agent of Haneke for the collection of the principal and interest of the first note. This agency, however, terminated with the giving of the second note. This note was, by its terms, payable at the Bank of California in San Francisco, and the note was given to the bank for collection. The plaintiff seems to have known of this fact. He fell into the habit, however, of paying his interest to Treadwell,

who assumed still to be the agent of Haneke.  At least six payments of interest were made in this way. Treadwell sent the money to the bank, and the receipts therefor were forwarded to him and by him delivered to the plaintiff.  On some occasions, however, the plaintiff sent the interest to the bank through one R. W. Pendergast, who had no connection with Treadwell. Not only was interest paid to Treadwell, as above stated, but on one occasion a part payment of the principal was made to him.  .  .  .   There can be no doubt but that the plaintiff believed in good faith that Treadwell remained the agent of Haneke for the collection of the principal and interest after the giving of the second note; and this belief was justified by the conduct of Haneke.  Plaintiff had made one payment of principal to Treadwell, and this payment had not been repudiated by Haneke, but was credited upon the note.  Ostensible authority may be conferred by the recognition of a single act of the agent, if sufficiently unequivocal.  .  .  .   Haneke was chargeable with knowledge that Treadwell continued to act in some way in the matter.  He was chargeable with this knowledge, because the bank knew it, and the bank was his agent for the collection of the debt.  .  .  .   Now, if Haneke knew that Treadwell was continuing to act in the matter at all, the only inference which he was entitled to draw, and the one which he ought to have drawn, was that he was continuing to act as he had commenced, viz; as his (Haneke's) agent.  It was not a natural inference that Treadwell had changed his position in the matter, and was acting for the other side.  The presumption was that he was assuming to act for Haneke; and we think that this was what nine out of ten business men would have thought.  This being the case, Haneke ought to have repudiated the assumed agency, and not have suffered the matter to stand as it did.  .  .  .   Nor does the fact that the note was not in the possession of Treadwell change the result.  The want of possession of the note is a circumstance to be considered in determining the question of authority, but is not conclusive."

This court, in *Easton v. Littooy,* 91 Wash. 648, 158 Pac. 531; *Kraus v. Dowell,* 119 Wash. 90, 204 Pac. 795; and *Masterson v. Haislett,* 119 Wash. 650, 206 Pac. 359, has held that, under circumstances similar to those at bar, a payment to a person other than the holder was in fact a valid payment, for the reason that it was made to one who, by the conduct of the holder, the court was justified in saying was the owner's agent.

For these reasons the judgment is affirmed.

TOLMAN, C. J., HOLCOMB, and MITCHELL, JJ., concur.