## MORLEY v. UNIVERSITY OF DETROIT.

1. TRUSTS—MORTGAGES—PAYMENT.
    Fact that payments by mortgagor under trust mortgage were not made in gold specie nor five days before due date as required by trust instrument does not invalidate payments where trustee, agent of the bondholders, accepted payments as made without objection and precluded objection by bondholder who failed to present his bonds and coupons at maturity or before trustee became insolvent.

2. SAME—PRINCIPAL AND AGENT—BILLS AND NOTES.
    Relation of trustee under trust mortgage as agent of bondholders to secure payment from mortgagor prior to due date does not render bonds nonnegotiable.

3. PRINCIPAL AND AGENT—BILLS AND NOTES—PAYMENT.
    A negotiable instrument may be discharged when payment is made to the agent of the holder thereof in good faith.

4. TRUSTS—INSOLVENCY OF TRUSTEE—MORTGAGES—BONDS.

Mortgagor who deposited with trustee sufficient funds to redeem negotiable bonds at maturity pursuant to trust mortgage providing that such deposit should be deemed a full payment as between mortgagor and bondholder *held,* not liable to bearer who failed to present his bonds and coupons at maturity or before subsequent insolvency of trustee.

POTTER, J., dissenting.

Appeal from Wayne; Marschner (Adolph F.), J. Submitted April 13, 1934. (Docket No. 103, Calendar No. 37, 729.) Decided October 23, 1934.

Assumpsit by George W. Morley against University of Detroit, a Michigan corporation, on trust mortgage bonds. Judgment for defendant. Plaintiff appeals. Affirmed.

*Don M. Harlan,* for plaintiff.

*Monaghan, Crowley, Reilley & Kellogg (Edward T. Kelley,* of counsel), for defendant.

BUTZEL, J. Questions in the instant case were considered by us in *Morley* v. *University of Detroit,* 263 Mich. 126 (90 A. L. R. 464), on an appeal from an order denying plaintiff a summary judgment on the pleadings. Upon our affirmance of the order of the trial judge, the case was tried on its merits by the lower court and judgment rendered discharging defendant from liability on certain bonds and coupons in controversy. Plaintiff has again appealed. On account of the importance of the questions involved we have given further consideration to the case. We abide by our former decision.

Plaintiff owns coupons that matured March 1, 1931, and bonds and coupons which became due September 1, 1931. Defendant paid the Fidelity Trust

Company, which was trustee under the mortgage that secured the bonds, sufficient amounts to pay all bonds and coupons which matured on both March 1, and September 1, 1931. Payments were made by voucher checks, payable to the Fidelity Trust Company and showing that their purpose was to pay the maturing interest and bonds. Although payments were not made five days prior to the respective due dates as provided in the mortgage or in gold, as also ·specified therein as well as in the bonds and coupons, they were made on or prior to the due dates of the respective bonds and coupons and accepted by the trustee. No objection was made by the trustee to the fact that the payments were not made in gold specie. In as much as the Fidelity Trust Company was the agent for the bondholders, as hereinafter stated, and accepted the payments as made, no valid objections can be made to either the time or form of payment.

The Fidelity Trust Company closed its doors on or about October 17, 1931, on the order of the State banking commissioner and receivers were appointed. The plaintiff failed to present his coupons and bonds that had become past due and for which payment had been made by defendant to the trustee. He seeks to hold defendant liable on the claim that the bonds were negotiable instruments, that the trustee was merely a depository and defendant's agent, and that defendant was not released from liability through payment to the trustee.

The mortgage securing such bonds provided that mortgagors will "promptly and punctually pay the principal and interest of every bond now or hereafter issued hereunder and secured hereby, at the dates and in the manner specified in such bond or bonds and/or in the coupons, according to the intent and meaning thereof, and will deposit the necessary

funds for such purpose with the trustee at least five days prior to the respective due dates.''

In case of the redemption of bonds issued and secured by the mortgage deed of trust, the mortgage provided:

''The mortgagor shall deposit with the trustee, to the credit of such bond, designating it by the number thereof, a sum equal to the redemption price, with interest accrued to the redemption date, and in that event, such deposit shall be deemed a full payment of such bond and the coupons belonging thereto as between the mortgagor and the holder thereof. No holder of any bond or coupon covered by a deposit so made shall be entitled to interest on such deposit with the trustee. Upon deposit being made as aforesaid, the bonds and coupons covered thereby shall be excluded from participation in the lien and security of this indenture, and the holder or holders of such bonds and coupons shall look for the payment of such bonds or coupons only to the sums so deposited in the hands of the trustee, and the mortgagor shall in no event be liable upon such bonds or coupons after deposit has been made as herein provided. The sum or sums so deposited shall be held by the trustee to the credit of said bonds and shall be paid by the trustee to the holder or holders upon surrender of such bonds with all outstanding coupons belonging thereto.''

It is true that more apt words were used in provisions of the indenture for the redemption of bonds by the mortgagor prior to the date of maturity, upon any interest payment date. It is there expressly stated that the deposit of moneys with the trustee for the redemption of such bonds shall constitute payment and release the mortgagor from further liability to that extent. The failure, however, to use equally effective language as to payment of bonds and coupons, as they mature, does not vitiate the

effect of the provision of the indenture obligating the mortgagor to deposit funds with the trustee at least five days prior to the respective due dates for the purpose of paying such maturing bonds and coupons. The mortgagor bound itself in the indenture to punctually pay the principal and interest of every bond according to the terms of the bonds and coupons, and as stated in the indenture, it agreed to "deposit the necessary funds for such purpose with the trustee at least five days prior to the respective due dates." Such deposit was made for the very purpose of payment, and constituted payment. The bonds were negotiable in accordance with the rule laid down in *Paepcke* v. *Paine,* 253 Mich. 636 (75 A. L. R. 1205), and *Merchants National Bank* v. *Detroit Trust Co.,* 258 Mich. 526 (85 A. L. R. 350). The trust indenture unquestionably constituted the Fidelity Trust Company the bondholders' agent, charging it with the duty to obtain payment of the bonds and coupons prior to their due date for the better security of the bondholders. The creation of such agency would not make the bonds nonnegotiable. A negotiable instrument may be discharged when payment is made to the agent of the holder thereof in good faith. *Northwestern Mutual Life Ins. Co.* v. *Blohm,* 212 Iowa, 89 (234 N. W. 268); *First National Bank of Seattle* v. *Hessell,* 133 Wash. 643 (234 Pac. 662); *Marling* v. *Nommensen,* 127 Wis. 363 (106 N. W. 844, 5 L. R. A. [N. S.] 412, 115 Am. St. Rep. 1017, 7 Ann. Cas. 364).

It is claimed that in accepting the deposits in payment of the maturing bonds and coupons, the trustee was the agent of the mortgagor. The indenture does not so provide. The record is silent as to how the trustee was appointed in the instant case. Neither does it show that when a borrower seeks a

loan of large sums of money through the issuance of serial bonds or debentures which he offers to secure by mortgage or other indenture, it is customary for the purchasers or underwriters of the entire issue to select the trustee for the benefit of the bondholders, so that their interests may be properly protected; that subsequently the bonds or debentures are sold to the public who rely upon the fact that a proper trustee is looking after their interests. The trustee acts for the benefit of the bondholders, although it may be given special authority and power under certain conditions to act for the mortgagor and then only for the very purpose of protecting the interests of the bondholders. The insurance policies on all buildings erected upon the property included in the indenture are payable to the trustee for the protection of the bondholders. The trustee gives notice of default, and in order to ascertain whether or not there has been a default, it does not inquire of each holder of the "bearer" bonds whether he has received payment, but simply determines whether the moneys have been deposited with it as trustee in payment of the maturing bonds and coupons. Had the money not been forthcoming on the date when the bonds and coupons became due, it would have been the duty of the trustee to make every endeavor to obtain payment to itself as agent of the bondholders. The trustee is charged with the duty to act in case of default, if directed by 25 per cent. of the bondholders, and under certain circumstances, even without such direction; it further has the right in the event of default to recover judgment against the mortgagor. The right of action for the mortgagor's breach of the terms of the indenture is vested exclusively in the trustee, subject to certain provisions, and under no circumstances may any

bondholder institute any action or other proceedings on or under the indenture except in case of the trustee's refusal to perform its duty. The trustee may agree to a modification of the bond or release part of the securities with the consent of 50 per cent. of the bondholders.

The indenture shows beyond any question that the duties of the trustee are for the benefit of the bondholders and adverse to the mortgagor. Reference to the security in the indenture would disclose the duty of the mortgagor to make payments to the trustee in advance of the due dates of the bonds and coupons. This provision is for the security of the bondholders for it enables the trustee who is guarding their interests to have the required moneys on hand for the payment of the bonds and coupons as they become due and to take prompt action in case such moneys are not paid. The indenture was issued for the purpose of securing a series of bonds, there being 1,600 issued, aggregating $1,500,000 under series A, all payable to bearer, unless registered, and others under series B. The mortgagor could not know who held the bonds and coupons. It could not, under the terms of the indenture, refuse to pay the trustee until the bonds and coupons were presented. It was bound to make the payments prior to the due date, and after such payments were made, it could not withdraw them. Although the question involved in the instant case was not presented in *Armada State Bank* v. *Union Guardian Trust Co.,* 262 Mich. 487, we held in that case that the holders of matured bonds were entitled to the funds deposited with the trustee for the express purpose of paying such bonds. See, also, *Gillen* v. *Wakefield State Bank,* 246 Mich. 158. The moneys so deposited were impressed with a trust of which the bondholders

were the beneficiaries. The record does not show what proceedings, if any, were taken to recover them.

In view of the above considerations, can it then be said that the mortgagor, in depositing the funds with the trustee for payment in accordance with the terms of the indenture, was doing so to its own agent for its own benefit, and then still remained liable to each and every bondholder who neglected to present his bonds or coupons at maturity or within a reasonable time thereafter? The bond itself, while a negotiable instrument, states that it is one of a duly authorized issue of the series and designation indicated on its face, all issued and to be issued from time to time in accordance with the mortgage indenture to which it makes reference for the amount of the bonds which may be outstanding, a description of the property mortgaged, the nature and extent of the security created, and the rights of the holders of the bonds with respect to such security. It further refers to the mortgage to show how the bond may be declared due and payable prior to its maturity in case of certain events of default specified in the mortgage. It further refers to the University of Detroit as the mortgagor and states how, at the option of the mortgagor, the bonds may be redeemed on any interest date prior to maturity. The bond states that it is payable at the office of the Fidelity Trust Company, that the Fidelity Trust Company is trustee of the issue, and further provides that neither the bonds nor coupons are valid until authenticated by the signature of the trustee on the certificate attached to the bond. As stated in our former opinion in *Morley* v. *University of Detroit,* 263 Mich. 126 (90 A. L. R. 464), it is generally known by investors in this class of securities that

it is the duty of the trustee to collect payments and make distribution among the bondholders. The bonds are negotiable instruments. The trustee was the agent of the bondholders to collect payments for them.

We find that the adjudicated cases are not in accord and that each one of them presents a factual situation somewhat different from that in the case at bar. See 90 A. L. R. 464. Notwithstanding the cases cited in opposition to our view, we are impressed with the reasoning in *Manchester* v. *Sullivan,* 112 Conn. 223 (152 Atl. 134); *Masonic Widows' & Orphans' Home & Infirmary* v. *Title Insurance & Trust Co.,* 248 Ky. 787 (59 S. W. [2d] 987); *Fidelity & Columbia Trust Co.* v. *Schmidt,* 245 Ky. 432 (53 S. W. [2d] 713); *McCormick* v. *Johnson,* 134 Kan. 153 (4 Pac. [2d] 421); *Hall* v. *Goldsworthy,* 136 Kan. 247 (14 Pac. [2d] 659); *The Inn At South Palm Beach, Inc.,* v. *Jacobs,* 115 Fla. 486 (155 South. 835), in all of which it was held that the trustee was the agent of the bondholders, or that the mortgagor was released from further obligation upon paying the trustee. In *Hall* v. *Goldsworthy, supra,* the court, in holding that the mortgagor was released, said (p. 252):

"It is contended that the court erred in its conclusion that the bondholders must bear the loss, if any, with respect to the payment of $167.31 to the Guarantee Title & Trust Company, which had become insolvent before distribution of the fund had been made to the bondholders. In other words, it is contended that the payment of the money to the trust company did not constitute a payment on the indebtedness, but was merely a deposit. The solution to this question is found in the construction of the instrument. The note is made payable at the office of the trust company. The names of the bondholders are not disclosed. The company is the trustee.

The trustee has the power, on payment of the indebtedness, to release and discharge the mortgage lien, and, in event of default, to maintain an action to foreclose the mortgage. It is more than a depository. It is in fact the plaintiff in this case. The bondholders are not parties. They are relying upon the terms of the instrument vesting the trustee with the power to enforce the obligation. It hardly seems consistent to permit the trustee to maintain an action to enforce collection and at the same time charge the mortgagor with the failure of the trustee to distribute the fund to the bondholders. In the case of *McCormick* v. *Johnson,* 134 Kan. 153 (4 Pac. [2d] 421), this court held that the payment of the fund to the trustee relieved the mortgagor of the responsibility of the distribution of the fund. While the language of the trust deed in the case cited is much stronger with reference to payment than the language contained in the trust deed under consideration, yet there is a similarity in the two instruments and they attempt to reach the same end. It appears that the plain intent of the parties was to vest the trustee with the power to receive payment and to make distribution thereof. Under such circumstances we are compelled to hold that the payment of the money to the trustee relieved the mortgagor from further responsibility, and that the bondholders must look to the trustee for the distribution of the fund.''

The judgment of the lower court is affirmed, with costs to defendant.

NELSON SHARPE, C. J., and NORTH, FEAD, WIEST, BUSHNELL, and EDWARD M. SHARPE, JJ., concurred with BUTZEL, J.

POTTER, J. (*dissenting*). This case was here in *Morley* v. *University of Detroit,* 263 Mich. 126 (90 A. L. R. 464). It is claimed the former decision of this court established the law binding upon the court

in the final disposition of the case. The former decision was not on the merits. Plaintiff filed a declaration which defendant answered. Plaintiff then made a motion for summary judgment on the pleadings. Judgment was denied by the trial court as to the bonds and coupons in controversy. Plaintiff appealed and in this court the judgment of the trial court was affirmed. What was decided when the case was here before? That on the pleadings plaintiff was not entitled to the summary judgment for which he asked. Subsequently the case was tried and disposed of on the merits. The trial court's judgment following that on the pleadings. Plaintiff appeals.

The bond contained a reference to the trust mortgage: "for the amount of bonds which may be outstanding, a description of the property thereby mortgaged, the nature and extent of the security thereby created, and the rights of the holders of said bonds with respect to such security."

The mortgage securing such bonds provided that mortgagor will "promptly and punctually pay the principal and interest of every bond now or hereafter issued hereunder and secured hereby, at the dates and in the manner specified in such bond or bonds and/or in the coupons, according to the intent and meaning thereof; and will deposit the necessary funds for such purpose with the trustee at least five days prior to the respective due dates."

In case of the redemption of bonds issued and secured by the mortgage deed of trust, the mortgage provided:

"The mortgagor shall deposit with the trustee, to the credit of such bond, designating it by the number thereof, a sum equal to the redemption price, with interest accrued to the redemption date, and in that event, such deposit shall be deemed a full payment

of such bond and the coupons belonging thereto as between the mortgagor and the holder thereof. No holder of any bond or coupon covered by a deposit so made shall be entitled to interest on such deposit with the trustee. Upon deposit being made as aforesaid, the bonds and coupons covered thereby shall be excluded from participation in the lien and security of this indenture, and the holder or holders of such bonds and coupons shall look for the payment of such bonds or coupons only to the sums so deposited in the hands of the trustee, and the mortgagor shall in no event be liable upon such bonds or coupons after deposit has been made as herein provided. The sum or sums so deposited shall be held by the trustee to the credit of said bonds and shall be paid by the trustee to the holder or holders upon surrender of such bonds with all outstanding coupons belonging thereto.''

The answer of defendant to plaintiff's declaration was:

"That said bonds provide that they, and the coupons appertaining thereto, are payable at the office of the Fidelity Trust Company, said coupons being payable upon presentation and surrender at maturity; that by the terms of said trust indenture the defendant herein did covenant that it would pay the principal and interest of the bonds issued thereunder when due, and in order to effect said payment would deposit with the trustee, the Fidelity Trust Company, the necessary funds for such purpose, at least five days prior to the due date of said bonds and/or coupons; that in accordance therewith, in order to provide for the payment of interest coupons maturing March 1, 1931, there was deposited with the said Fidelity Trust Company an amount equal to the aggregate of interest then payable upon said bonds, and in accordance with said trust indenture there was deposited prior to September 1, 1931, and in accordance with said trust indenture, suffi-

cient moneys to pay both interest on the then outstanding bonds issued under said indenture, and the bonds then maturing thereunder; that on or about October 17, 1931, said Fidelity Trust Company did become insolvent and closed its doors; * * * that the said plaintiff did not present for payment the interest coupons pertaining to bonds No. 204 and No. 210, either for March 1, 1931, or September 1, 1931, maturing, nor said bond No. 204 and No. 210 which became due and payable September 1, 1931, until after the said Fidelity Trust Company had become insolvent and was unable to * * * make further disbursements; * * * that upon the deposit of the sums required therefor with said Fidelity Trust Company, the said defendant fully discharged its obligations under said bonds; that the payment of said sums to the Fidelity Trust Company as aforesaid, was a payment to the trustee for the benefit of the holders of all bonds and coupons then due, and all right, title and interest in the moneys so deposited by the said defendant fully passed from the defendant and said moneys were thereafter held for the bondholders and for no other person."

Mortgagor paid the money to cover the bonds due in March and September by check, in the usual and ordinary form. Its check of September 1, 1931, was typical and was as follows:

"University of Detroit        No. 12622
"Six Mile at Livernois
"Prin. Series A.....    60,000
"Int.  Series A.....    33,500
"Int.  Series B.....     9,375        Detroit, Mich.,
                        ———          Sept. 1, 1931
                       $102,875
"Pay to the order of
"Fidelity Trust Co.....................$102,875
"University of
"Detroit    $102875    00Cts.............Dollars

"Six Mile-Welland Branch    UNIVERSITY OF DETROIT,
"To First National Bank        By J. T. MURTELL, 8
   9-1    Detroit, Mich.                        Treas.
                    (On Back)
              "Pay to the Order of
        "Any Bank, Banker or Trust Co.
               }      Sep-1 31      {
         "FIDELITY BANK & TRUST COMPANY
         "9-73    Detroit, Michigan    9-73"

It is conceded no money was actually paid to plaintiff on his bonds and coupons; that if the bonds were paid, it is because the money was paid by defendant to the trust company as agent of plaintiff, and payment to plaintiff's agent was, in effect, payment to plaintiff. There having been no actual payment to plaintiff, the burden was upon defendant to establish facts constituting a substitute for actual payment.

Defendant, in its answer, claimed it deposited the money with the trustee to be used in payment of the bonds and coupons in accordance with the terms of the trust instrument. This the record does not exactly show, but shows that neither in March nor September was the money for the payment of the bonds and coupons deposited five days before the due dates thereof, though it is conceded it was deposited so as to be available for the payment of the bonds and coupons on their due date. Plaintiff did not present his bonds and coupons for payment on their due date nor until after the closing of the Fidelity Trust Company. The bonds and coupons were payable in gold of a specified standard weight and fineness. Gold was not paid to the trustee. Plaintiff asserts the payment claimed by defendant, if anything, is analogous to a tender; that it must

have been made in gold coin of the United States in accordance with the terms of the trust indenture and kept good.

The bonds in question were negotiable instruments. 2 Comp. Laws 1929, § 9250; *City of Adrian* v. *Whitney Central National Bank,* 180 Mich. 171 (Ann. Cas. 1916 A, 600).

"Presentment for payment is not necessary in order to charge the person primarily liable on the instrument; but if the instrument is, by its terms, payable at a special place, and he is able and willing to pay it there at maturity, such ability and willingness are equivalent to a tender of payment upon his part. But except as herein otherwise provided, presentment for payment is necessary in order to charge the drawer and indorsers." 2 Comp. Laws 1929, § 9319.

"A negotiable instrument is discharged:

"First, By payment in due course by or on behalf of the principal debtor;

"Second, By payment in due course by the party accommodated, where the instrument is made or accepted for accommodation;

"Third, By the intentional cancellation thereof by the holder;

"Fourth, By any other act which will discharge a simple contract for the payment of money;

"Fifth, When the principal debtor becomes the holder of the instrument at or after maturity in his own right." 2 Comp. Laws 1929, § 9368.

In *Binghampton Pharmacy* v. *First National Bank,* 131 Tenn. 711 (176 S. W. 1038, 2 A. L. R. 1377), it is said:

"We think that section 87, declaring an instrument payable at a bank the equivalent of an order on the bank, was only intended to settle the vexed question of the bank's right, without specific au-

thority, to pay such an instrument and charge same to the account of the principal debtor. Prior to the act of 1899, in Tennessee and elsewhere, the fact that a note was made payable at a bank did not, without more, confer authority upon the bank to pay the note, when presented there at maturity by the holder, out of funds standing on deposit to the credit of the maker. * * * Section 87 authorizes a bank, at which an instrument is made payable, to pay same for the account of the principal debtor. To that extent all instruments payable at a bank are orders on the bank designated. The language used in this section, however, must not be so expanded as to destroy other provisions of the act."

In *Wood* v. *Merchants Saving Loan & Trust Co.,* 41 Ill. 267, suit was brought against the maker of a note payable at a banking house. At the due date of the note the maker thereof had on deposit with the bank sufficient funds to pay the note. The note was presented when due, marked good by the teller and taken from the bank by the holder thereof. It was not paid. The bank failed; the money standing to the maker's credit not having been withdrawn. The maker was held liable on the note, the court holding that the making of a note payable at a bank did not amount to an agreement that the maker might deposit the amount of the note in the bank and thus discharge his obligation and cast the risk upon the holder.

In *Ward* v. *Smith,* 7 Wall. (74 U. S.) 447, a question similar to that here involved was before the court and it was held that the bank was not the agent of the holder of the bonds, but was the agent of the obligor; that the obligor by depositing the money to the credit of the obligee could not make the bank the agent of the latter, and that the loss arising from subsequent shrinkage in value of notes

deposited could not fall upon the holder of the bonds.

In *Williamsport Gas Co.* v. *Pinkerton,* 95 Pa. 62, the gas company issued its coupon bonds payable at a banking house. The gas company deposited from time to time with the bank the money to pay and retire its coupons when presented. Plaintiff was owner of one of the gas company's bonds. Part of the coupons due were paid when the bank closed. The court said:

"The corporation which issues a coupon bond is in the position of a maker of a promissory note, not of the drawer of a check or bill of exchange. There is no obligation on the holder to present and demand it within a reasonable time. The same rule applies to the coupons as to the bond. In fact he may hold on to the coupons just as long as he can hold on to the bond without requiring payment. * * * The banking house at which it was made payable were the agents of the corporation, and the holder could not lose in any event by their insolvency."

In *Adams* v. *Hackensack Improvement Commission,* 44 N. J. Law, 638, 646 (43 Am. Rep. 406), a similar question was before the court and it is said:

"I think those cases which affirm the continuing liability of the maker, acceptor or obligor on paper made payable at a banker's where the debtor had provided funds for payment at maturity, which the holder might have received if he had demanded payment when due, and which were lost by the subsequent failure of the banker, were correctly decided. * * * The question becomes simply one of agency. * * * The naming of a bank in a promissory note as the place of payment, does not make the banking association an agent for the collection of the note or the receipt of the money. No power, authority or duty is thereby conferred upon the banker in ref-

erence to the note; and the debtor cannot make the banker the agent of the holder by simply depositing with him the funds to pay it with.''

In *Miller* v. *Mitchell,* 58 W. Va. 431 (52 S. E. 478), the question was whether payment to a trustee in a deed of trust securing the payment of several promissory notes was payment of the notes. It was said:

''The burden of proof was upon the defendants to show that Wells was the attorney for Brown, and that in receiving the payments, he was acting as such attorney. This they nowhere attempt to show, but content themselves by filing as exhibits with their answer the several receipts from Wells. As trustee, he had only such powers as are conferred upon him by statute, and by the terms of the instrument creating the trust, and the power to receive payment of the trust debt is not included in them. 'As a general rule a trustee's authority over the trust property is defined and limited by the instrument creating the trust; and he should be guided strictly by its provisions.' ''

Genesee Gravel Pits, Inc., gave a mortgage to a trust company to secure the payment of a bond issue. The trust instrument provided for the payment into the sinking fund of five cents a ton on all gravel removed, ''the sums so paid *shall be held by the trustee as a sinking fund and used by it* from time to time, and at least annually, for the payment and retirement of said bonds *pro tanto* in the manner and upon the terms provided for the redemption of bonds in article fourth of this indenture.''

The mortgagor had made payments into the sinking fund. Plaintiff presented the bonds owned by him which had been properly designated for payment, but upon presentation the trustee declined to

redeem them upon the ground the mortgagor had defaulted and the moneys in the sinking fund should be used to pay the defaulted interest upon the entire series of bonds. The court said:

"The agreement provided that the funds were to be used for a specific purpose. There was no agreement that if the interest was not paid upon the other bonds the sinking fund could be used to pay the interest. The trustee has no right to divert the funds because some one may regret the bargain. Under the terms of the mortgage or deed of trust, the moneys deposited ceased to be the property of the corporation and became a trust fund for the benefit of the fortunate bondholders and no one else has a right to them." *Truby* v. *M. & T. Trust Co.,* 141 Misc. Rep. 507 (253 N. Y. Supp. 108).

In *Connell* v. *City of Kaukauna,* 164 Wis. 471 (159 N. W. 927, 160 N. W. 1035, Ann. Cas. 1918 A, 247), the city, under the law providing therefor, appropriated the property of the water company against which outstanding unpaid bonds had been issued, secured by a trust mortgage on the property. The trust company, trustee under the mortgage, and the water company were owned and controlled by the same person. The water company was awarded $50,000 for its property; $75,000 in bonds were outstanding; some deductions were made, and the city paid the water company $45,294.40 which the water company paid to the trust company, which paid but $15,500 to the bondholders. The trial court held the payment to the trust company was in fact a payment to the bondholders and thereafter bondholders had no remedy except a personal claim against the trustee. The supreme court, in reversing the case, said:

"It is true that the coupons and bonds were payable at the office of the trust company, but they were so payable only when due. The fact that the bonds

and interest coupons were made payable at the office of the trust company did not make the trust company the agent of the bondholders to receive payment. Money deposited with the trust company for that reason remained the property of the payor, and if lost it was the loss of the payor.''

In *Steel Cities Chemical Co.* v. *Virginia-Carolina Chemical Co.* (C. C. A.), 7 Fed. (2d) 280, money was deposited by the chemical company with the trust company to pay coupons maturing on its outstanding bonds. The money was deposited by the chemical company as per trust agreement. The trust agreement provided:

''Any moneys at any time deposited by the company with the trustee for the redemption or other payment of bonds or for the payment of interest thereon shall be and are hereby assigned, transferred, and set over unto the trustee in trust for the holders of the bonds or coupons intended to be paid therewith, and the company shall have no rights or interest in any such moneys.''

In disposing of the case the court distinguished it from *In re Interborough Consolidated Corporation* (C. C. A.), 288 Fed. 334 (32 A. L. R. 932), saying:

''In the instant case we have seen it was expressly provided in the indenture, in the provision which defined the rights, powers, and duties of the trustee, that any moneys deposited with the trustee for the payment of bonds or interest thereon 'shall be and are hereby assigned, transferred, and set over unto the trustee in trust for the holders of the bonds or coupons intended to be paid therewith, and the company shall have no rights or interest in any such moneys.' ''

And the court held the trust company acted as trustee and not as fiscal agent of the corporation in receiving such money.

In *Andrews* v. *Missouri State Life Ins. Co.* (C. C. A.), 61 Fed. (2d) 452, the Missouri State Life Insurance Company sued Andrews on defaulted interest coupons issued by Andrews. Andrews pleaded payment in that the Bank of Tennessee, the surviving trustee under the trust mortgage securing the bond issue had collected from the mortgaged property sufficient money to pay the maturing coupons and had it on hand when it failed. The case was rested on the contention that the bank held the money as agent and trustee of the bondholders; that its possession of it at the date of the maturity of the coupons operated as payment of the coupons and that any loss arising from the subsequent failure of the bank should fall upon the owners thereof. The trust instrument provided that certain moneys were to be paid to the trustee and retained by it to pay principal and interest of the bonds outstanding as they matured. A sum sufficient to pay the coupons maturing November 1, 1930, had been received and retained by the trustee under the trust mortgage, and it was contended and the trial court agreed that the sum on hand by the trust company might be considered a deposit with the trustee for that purpose. The court said:

"We find nothing in the language of either covenant to make the money thus in the hands of the trustee at the maturity of the coupons to be *ipso facto* payment. The absence of such language is in strong contrast with the explicit provisions to that effect when deposit is made to pay called bonds. * * * It suffices to hold that the coupons have not under the facts alleged been paid, and Mrs. Andrews is still under personal obligation to pay them."

In *Re Interborough Consolidated Corporation, supra,* the Interborough Consolidated Corporation

became bankrupt. Prior thereto it had issued a large amount of bonds which were outstanding and unpaid. It had on deposit, at the time it became bankrupt, with the Empire Trust Company, $431,910 for the payment of interest on outstanding bonds. After the adjudication of bankruptcy it was sought to hold such funds as a trust fund for the payment of the coupons due prior to the adjudication in bankruptcy. This was opposed on the ground the money belonged and should be distributed to general creditors of the bankrupt. The court held, after an exhaustive review of the authorities, this money did not belong to the holders of the interest coupons; did not constitute a trust fund set apart for the payment thereof; but, that the deposit continued to be the property of the debtor and belonged to the general creditors thereof, quoting 3 Pomeroy's Equity Jurisprudence (4th Ed.), § 1282; Story's Commentaries on Equity Jurisprudence (13th Ed.), §§ 1045, 1046; 5 C. J. p. 913.

(a) There can be no payment by the deposit of money in a bank or trust company, at which bonds and coupons are made payable unless there is an unequivocal parting with the title to the money deposited by the mortgagor, and a passing of the title thereto to the trustee; the relation of debtor and creditor between the depositor and the trustee which ordinarily exists must be canceled and there be established in its place an unequivocal relation of debtor and creditor between the trustee and the bond or coupon holder. The mortgagor and maker of the bonds must part with the title to the money deposited. No relation of debtor and creditor between the maker of the bonds and the trustee, arising from such deposit, may continue. The depositor or mortgagor must have no right to withdraw the

deposit or any part thereof. The title to the fund must be absolutely and unequivocally in the trustee for trust purposes. The beneficiaries of the trust fund must be the bond or coupon holders. They must have a right to recover the fund. It must be their fund held in trust for them by the trustee.

(b) Payment by deposit with the trustee must have been unequivocally assented to by the bondholder so the trustee in taking and holding and paying out the money must not be the agent of the mortgagor to pay out the money, but the agent of the bondholders or coupon holders to receive it.

(c) The bonds referred to the mortgage. By the mortgage the mortgagor covenanted to promptly and punctually pay the principal and interest, and to deposit the necessary funds for such purposes with the trustee at least five days before the respective due dates; but there was no agreement assented to by the bondholders that the trustee was to act for them, receive the money so deposited for them, or to do anything other than to act as fiscal agent of the mortgagor in the payment of bonds and coupons upon maturity.

(d) An entirely different arrangement was made as to the payment of money by the mortgagor to the trustee for the redemption of bonds called for payment. That provision of the mortgage provided for the deposit of the money for bond redemption with the trustee, to the credit of the several bonds to be redeemed, such deposit should be full payment thereof, that thereafter the bond or coupon holder should not be entitled to interest, should thereafter be excluded from participation in the lien and security of the mortgage; the holder of such bonds and coupons should look for payment only to the sums deposited with the trustee, and the mortgagor

should in no event be liable upon the bonds or coupons after the deposit of the money.

(e) A similar provision might have been made in relation to the payment of the bonds and coupons in question as they matured. Not having been made, we think it a fair construction of the trust mortgage it was not intended to be made, and that the deposit of the money under the terms of the trust mortgage relied upon did not constitute payment and discharge of the bonds in question.

The particular case under consideration is not of itself of great importance, but the principles involved are and will be in the future of great importance to all those whose surplus, reserve, endowment and trust funds may be invested in bonds or other evidences of indebtedness secured by trust mortgages, or which may be unsecured, as well as to all those who seek to raise money by floating securities secured by trust mortgages. Anything that in any way impairs the faith and confidence of the investing public in the certainty of payment of securities depreciates their value and salability. It is important, too, that the question involved should be decided correctly as a matter of principle because no legal question is ever finally settled until it is settled right.

It is claimed the former decision of this court in this case upon appeal from the order of the trial court denying plaintiff's motion for summary judgment is a former adjudication of the issues here involved; that the opinion there rendered by this court is not only binding upon the doctrine of *stare decisis,* but as the law of the case.

The question before this court at that time was the validity of the order of the trial court denying plaintiff's motion for summary judgment. That

order was sustained by this court, and the case remanded to the trial court for trial upon the merits. The defense to plaintiff's suit upon the bonds was payment. Payment was pleaded and the claim of payment sustained by an affidavit of merits. This court held that whether there had been payment of the bonds sued upon was a question of fact to be determined upon a trial on the merits, and sustained the trial court and remanded the case for such trial. Ordinarily, the action of the court would not, and could not, be construed as passing upon the merits of the main controversy, but as leaving that question to be determined upon trial upon the merits. This court speaks by its orders, judgments and decrees, and there is nothing in the action in the preceding case here which affects the question of payment or no payment which was remanded to the trial court for determination.

When the case was here before, this court rendered an opinion. After such opinion was rendered, an application for rehearing was made and denied. The important questions herein involved are the effect of the opinion then rendered and on application for rehearing adhered to, and the duty of this court under the law in relation thereto.

An opinion is not a judgment, order, or decree. It is no part of the record. The action of the court is the important thing. It has frequently been said that it is unimportant that a trial court gave a wrong reason for a right conclusion. So, the language of the opinion rendered by this court on the former hearing of this case must be read in the light of the circumstances under which it was used, and of the issue then before the court for consideration. It is supposed the opinions of this court will be read, not as abstractions, but as propositions bound up with the particular issues the court is then

dealing with, and it is in this way the observations of the court made when this case was here before must be considered. *Holcomb* v. *Bonnell,* 32 Mich. 6. When the expressions of an opinion upon a particular subject were not necessary to the decision rendered, such opinion will not be regarded as binding, under the rule of *stare decisis.* *Ellsworth* v. *Hall,* 48 Mich. 407.

In *Detroit Lumber Co.* v. *Auxiliary Yacht "Petrel,"* 153 Mich. 528, the court said in relation to the language of the opinion in *Milroy* v. *Spurr Mountain Iron Mining Co.,* 43 Mich. 231, where it was said the circuit courts were given jurisdiction in claims against boats and vessels irrespective of the amount claimed:

"It is properly said in defendant's brief that this was dictum. It is therefore entitled to no greater weight than would be given to it as an expression of an opinion of the justice writing the opinion."

When this case was here in *Morley* v. *University of Detroit,* 263 Mich. 126 (90 A. L. R. 464), the sole question was whether, under the facts stated in the declaration and accompanying affidavit of merits, plaintiff was entitled to a judgment. In view of the plea or answer and the affidavit of merits of the defendant, this court held with the trial court there was an issue of fact for trial, and that issue was whether payment of the bonds sued upon had been made. The opinion, however, says:

"In receiving the money for the payment of the note, the bank is agent of the maker. So, when the maker of a note or bond payable at a designated bank deposits money with the bank sufficient to pay it and the bank fails after maturity and before presentment by the holder, the loss falls on the maker. * * *

"The mortgagor made its deposit with the trustee for the payment of principal and interest, as required by the bonds and mortgage. It did all it was required to do. It paid as it had agreed with the bondholders. If it had not done so it would have been in default. Once paid, it could not reclaim the money. Its title and control passed to the Fidelity Trust Company, which thereafter held it as trustee for the bondholders awaiting maturity of the bonds and their presentment for payment. The money belonged to them. The Fidelity Trust Company was their agent and trustee to receive it and apply it in payment of their bonds and interest coupons.

"The defendant has shown payment. The plaintiff cannot recover."

Properly construed in the light of the facts and the decision made, all this language was *dictum,* not binding upon the court in this case upon either the theory of *res judicata* or *stare decisis,* or as the law of the case. Nothing of importance has been added in the last 150 years to the principle laid down by the House of Lords in the *Duchess of Kingston's Case,* 20 Howell's State Trials, 355, 538, upon the doctrine of *res judicata.* It enunciated the fundamental principles of the doctrine so clearly that its language has come to be recognized as a judicial maxim in England, and it was in the form there laid down the doctrine was received in America, and in Michigan, where it has been repeatedly recognized and applied. *Wales* v. *Lyon,* 2 Mich. 276; *Barker* v. *Cleveland,* 19 Mich. 230; *Jacobson* v. *Miller,* 41 Mich. 90; *Bond* v. *Markstrum,* 102 Mich. 11; *Crawford* v. *City of Detroit,* 169 Mich. 293; *Monger* v. *New Era Association,* 171 Mich. 614; *Murphy Chair Co.* v. *American Radiator Co.,* 172 Mich. 14; *Millen* v. *Potter,* 201 Mich. 1.

The first doctrine laid down by the House of Lords that the judgment or decree of a court of

competent jurisdiction upon the merits concludes the parties and privies to the litigation and constitutes a bar to a new action or suit involving the same cause of action either before the same or any other tribunal, has no application here for the reason, first, the prior judgment of this court was only that there was a question of fact to be determined on trial upon the merits; second, the former adjudication of this court was upon a preliminary procedural controversy, and not upon the merits; third, no new action is here before the court, but it is the same suit appealed after trial and judgment upon the merits.

Neither is the second rule laid down by the House of Lords: ''That the judgment of a court of exclusive jurisdiction, directly upon the point, is, in like manner, conclusive upon the same matter, between the same parties, coming incidentally in question in another court, for a different purpose,'' for: (1) the judgment of the court on the former appeal in this case was not upon the merits; (2) the question of payment was not adjudicated by the order of this court, although mentioned in the opinion, but remanded for determination by the trial court; (3) the question of payment is not an incidental question in this case, but the main point in controversy; (4) the question arises in the same case, in the same court, between the same parties; and (5) the purpose for which the question is raised is to show payment, the same and not a different purpose.

It has been said the former opinions of this court, in the same case, upon a prior hearing, constitute ''res judicata.'' *Union National Bank* v. *Rich,* 116 Mich. 414; *Quirk* v. *Rapid Railway,* 137 Mich. 493.

The error is that former opinions of this court, in which judgments are reversed and the cases remanded, negative any such claim. There cannot be

an adjudication without a judgment. A holding by this court there was no judgment cannot be construed as if there were a judgment. When a judgment rendered upon the merits is reversed, vacated, and set aside, it cannot logically be held there was an adjudication upon the merits, a binding and conclusive judgment. These expressions must be considered and treated as incorrect designations of an applicable principle of law. The doctrine of *res judicata* has no application.

In discussion, the doctrine of *stare decisis* has been appealed to. That doctrine amounts to this, that if a general rule of law has become settled by a prior decision, or a series of prior decisions, it should be upheld even though the court would, if. the question were new, decide otherwise. It is a practical rule, based upon expediency and public policy—the established theory that the law should remain settled. Upon the question here, there are no prior decisions. This is a case of first impression in this State so far as the merits of the controversy are concerned, and if the doctrine of *stare decisis* is to be appealed to at all, the overwhelming weight of authority is contrary to the opinion expressed when the case was here before. There are none of the essential elements of estoppel present here and, in the last analysis, the doctrine of *stare decisis* rests upon estoppel.

The important question is the claim the former opinion in this case established the law of the case.

"The doctrine of the law of the case differs somewhat from the doctrine of *stare decisis.*" *American Ins. Co. of Newark* v. *Martinek,* 216 Mich. 421, 424.

"It is a well-settled rule that courts will not review former decisions made by the same court in the same cause, and on the same facts." *Hickox* v. *Railway Co.,* 94 Mich. 237, 238.

"It is the well-settled rule that courts will not review former decisions made by the same court in the same cause, and on the same facts." *People's Savings Bank* v. *Eberts,* 96 Mich. 396.

"The conclusions reached on the record then made and then before this court cannot now be reconsidered nor disturbed." *Myers* v. *Erwin,* 180 Mich. 469, 471.

"The rule laid down must govern the case throughout." *Henry* v. *Quackenbush,* 48 Mich. 415.

"On all questions there decided that decision is the law of the case." *Fitzgerald* v. *City of Benton Harbor,* 132 Mich. 645.

"The decision then rendered must be treated as the law of the case." *Leland* v. *Ford,* 252 Mich. 547, 548.

The rules indicated above have been frequently recognized in other cases. *Motz* v. *City of Detroit,* 18 Mich. 495; *Rumney* v. *Webster,* 56 Mich. 195; *Mynning* v. *Railroad Co.,* 67 Mich. 677; *Dikeman* v. *Arnold,* 83 Mich. 218; *Damon* v. *DeBar,* 94 Mich. 594; *Apsey* v. *Railroad Co.,* 104 Mich. 646; *Burtraw* v. *Clark,* 107 Mich. 333; *Pierce* v. *Underwood,* 112 Mich. 186; *John A. Tolman Co.* v. *Reed,* 115 Mich. 71; *Hall* v. *Murdock,* 119 Mich. 389; *Quirk* v. *Rapid Railway,* 137 Mich. 493; *Thompson* v. *Village of Mecosta,* 141 Mich. 175; *Curtiss* v. *Curtiss,* 143 Mich. 676; *Culver* v. *Railroad Co.,* 144 Mich. 254; *Winkleman* v. *City of Adrian,* 151 Mich. 519; *Anderson Carriage Co.* v. *Pungs,* 153 Mich. 580; *Clark* v. *Goldie,* 177 Mich. 653; *Richardson* v. *Railway Co.,* 182 Mich. 206; *Saginaw Milling Co.* v. *Schram,* 198 Mich. 773; *Porth* v. *Cadillac Motor Car Co.,* 209 Mich. 89; *American Ins. Co. of Newark* v. *Martinek, supra.*

The law of the case is the law as established on the former appeal. 36 C. J. p. 965.

Based upon the authorities, both in this State and elsewhere, the rule is thus stated in 4 C. J. pp. 1093–1096:

"It is a rule of general application that the decision of an appellate court in a case is the law of that case on the points presented throughout all the subsequent proceedings in the case in both the trial and the appellate courts, and no question necessarily involved and decided on that appeal will be considered on a second appeal or writ of error in the same case, provided the facts and issues are substantially the same as those on which the first decision rested, and, according to some authorities, provided the decision is on the merits. This doctrine is not one whose extension is looked upon with favor, and it is adhered to in the single case in which it arises and is not carried into other cases as a precedent."

The rule of *stare decisis* is not so important it may not be departed from. 15 C. J. pp. 956, 957.

"When, however, it becomes apparent that the reasoning in an opinion is erroneous, and less injury would result from overruling it than following it, it becomes as much the duty of the court to correct it as to follow it under other conditions." *Attorney General, ex rel. Barnes,* v. *Midland Supervisors,* 178 Mich. 513.

There is, so far as I have been able to ascertain, no decision of this court which refused to follow the law of the case, but if this court is convinced this case was wrongly decided, or that the opinion rendered went too far in assigning reasons why the case should not be disposed of upon motion for summary judgment, but should be remanded for trial upon the merits, and that less injury will in the long run result from overruling that language, or from treating

it as *dictum,* then it should be eliminated or overruled, and, on the facts, judgment directed to be entered for plaintiff. The reasons why such language should be eliminated or overruled appear above.

The judgment of the trial court should be reversed, and the cause remanded for entry of judgment for plaintiff, but, under the circumstances, without costs of this court.