CALLIE E. SOSA AND ANTONIO SOSA, HER HUSBAND, *Appellants*, v. G. A. PETTAWAY, AS RECEIVER OF THE YBOR CITY BUILDING AND LOAN ASSOCIATION, *Appellee*.

Opinion Filed January 20, 1914.

1. Where an alleged Building and Loan Association made a loan to the appellants, but there was no competitive bidding for the amount loaned as required by the statute (Paragraph 2749, Gen. Stats. of 1906), and where the amounts covenanted to be paid weekly by appellants as dues on the loan, and premium and interest thereon, in the aggregate exceeded ten per cent per annum on the amount borrowed, the transaction does not come within the proviso of Section 3105 General Statutes of 1906, and is usurious.

2. The fact that an alleged Building and Loan Association has become insolvent and is in the hands of a receiver does not prevent the application of the usury statute of this State, in a suit by the receiver to foreclose a mortgage given to the association to secure the payment of a weekly sum of money as dues, interest and premium, which in the aggregate exceed ten per cent per annum.

Appealed from Circuit Court for Hillsborough County; F. M. Robles, Judge.

Order reversed.

*M. G. Gibbons*, for Appellants;

*McMullen & McMullen,* for Appellee.

HOCKER, J.—On the 24th of June, 1913, G. A. Petteway as Receiver of the Ybor City Building and Loan Association, a corporation organized and existing under the laws of Florida, filed his bill of complaint against appellants, Callie E. Sosa and her husband, Antonio Sosa. The allegations of the bill essential to be considered are that the appellants being desirous of procuring a loan from the Ybor City Building and Loan Association of $2,200.00 on the 23rd of October, 1907, made an application alleging they owned a lot and 22 shares of stock upon which they offered to give a first mortgage to secure the loan, and in all things to comply with the constitution and bylaws of the association as long as they were members. The loan was made and the mortgage which appellee seeks to foreclose was executed and delivered, and the 22 shares of stock was transferred to the association on the 5th of November, 1907. Antonio Sosa at the same time gave a bond reciting the foregoing facts and covenanting to pay the association not less than $3.30 as dues on said loan, and the sum of $3.30 as premium on said loan, and a sum of not less than $2.20 as interest on said loan, on each and every Saturday of each and every year, after the date of said bond, until the said shares borrowed should be fully matured, all of which appears by Exhibit "B" made a part of the bill. The bill alleges his proper execution of the mortgage on the lot of land. The mortgage is subject to a defeasance on the payment of the interest, dues and premiums as installments on the stock until the stock shall be fully matured under the by-laws of the association, fines, assessments, taxes and other covenants, then the mortgage to be void. The mortgage is made a part of the bill. The bill alleges that appellants paid to the association as dues

upon the stock $857.00; that they paid $857.00 as premium, and as interest $571.80. The bill alleges that the Building and Loan Association becoming insolvent on the 7th day of May, 1913, the orator was appointed Receiver of said association in the suit of Mary Coe Thompson *et al.* v. Ybor City Building and Loan Association and has qualified and entered upon the duties as such receiver with intention to collect all indebtedness due the association, pay all debts due by it, and to distribute the assets among the stockholders; that the purpose of the association was thereby defeated, and contracts between borrowing stockholders and the association terminated; that orator therefore charged the defendants with the sum of $2,200.00, the amount of the loan and computed the interest thereon at 8% from date of loan, to-wit, 5th of November, 1907, which amounts to $965.56 principal and interest, amounting to $3,165.56, and credited $571.80 interest paid, and $857.00 premium paid, a total of $1,428.80, to be credited upon the loan, leaving a balance due thereon of $1,736.76; that the sum of $857.00 paid as dues on stock will be taken account of when the pro rata interest of Antonio Sosa is ascertained. Orator demanded $1,736.76 of defendants, and they refused to pay any amount, and he therefore sues and asks costs and attorneys' fees.

The answer admits the application for the loan of $2,200.00, the execution of the bond and mortgage, the insolvency of the association and the appointment of appellee as receiver. It alleges that for a long time prior to the making of this loan the Ybor City Building and Loan Association had abandoned the Building and Loan plan of doing business as provided by the laws of Florida, in that it did not loan money upon the basis of competitive bidding, but lent its money on the basis of

requiring the borrower to pay certain stipulated amounts per centum of premium and interest fixed by the association at the time of making a loan, without any competitive bidding, and without offering or affording the stockholder any opportunity of bidding for the opportunity of receiving a loan; that it had abandoned its charter of a Building and Loan Association for every purpose except the issuance of stock payable in weekly installments, and making loans payable in weekly installments, and such loans were almost exclusively made to non-stockholders, so that the association was in reality conducted as a money-lending enterprise for the purpose of securing, as it customarily did, usurious interest; that for more than four years before their application was made it had abandoned holding any meeting of its directors, that its entire business was conducted and managed by Silas L. Biglow, who made no reports to the directors or stockholders, and conducted the business for the receipt and lending of money payable in weekly installments; that applicants desiring a loan applied to Silas L. Biglow who required defendants to sign the application, bond and mortgage described in the bill, so as to make the loan take the form of the Building and Loan Association plan under the laws of Florida; that neither of the applicants was a stockholder and never intended to become stockholders in said association; that said association continuously did business on the same plan as with them, and also customarily engaged in lending money at fixed rates of interest from 8 per cent. upwards, without any regard to the Building and Loan Association plan as contemplated by the laws of Florida; that they were foreigners and not familiar with the Florida law regarding the operation of Building and Loan Associations; that it was never intended to deliver the

22 shares of stock to Antonio Sosa—he did not pay for it, and it was only issued to attempt to comply with the law of Florida relating to Building and Loan Associations.

The answer sets up that the contract set forth in the bill of complaint was usurious inasmuch as the weekly interest and premium amounts to $5.50 per week, or 26 per centum per annum for the use of the money loaned, which is usurious; that the loans to appellants and others were made without competitive bidding, but on the basis of fixed rates of payment per week, and all borrowers were required to pay the same. The answer further alleges that the so-called premium in contract of loan is not properly a premium within the meaning of the law relating to Building and Loan Associations; that the premium permitted to be charged is a lump sum deducted from the principal at the time of the loan, and not amounts to be paid periodically during the life of the loan, and the amount only determined by the time it takes to pay off the loan. The answer alleges that prior to the appointment of the receiver appellants had paid on the land and mortgage $2,288.00, the last payment being made on the 18th of January, 1913, at which time appellants had no knowledge that the association was insolvent, and that the amount paid is more than they should have been required to pay; and that appellee is not entitled to recover of appellants any further sum. The foregoing sets forth the substance of the answer. All of the answer setting up defensive matter was excepted to and the exception sustained on the 5th of September, 1913. An appeal from this order was taken to this court.

There can be no doubt if the facts set up in the answer are true that the transaction between the appellants and the Ybor City Building and Loan Association was a

usurious one, providing for more than ten per cent interest per annum. It is alleged in the answer there was no competitive bidding as required by the statute in making the loan. If this is true the Ybor City Building and Loan Association is not such an institution as comes within the proviso of Section 3105, General Statutes of 1906. Bettis v. Tampa Real Estate Exchange & Loan Ass'n, 62 Fla. 435, 56 South. Rep. 499. We think, therefore, the Circuit Judge erred in sustaining the exception which embraced all the defensive matter contained therein. The principal contention here is in regard to rules which should apply in such a case in the settlement with the mortgagors by the Receiver. It is contended by the appellee that the association being insolvent, he is authorized to deal with mortgagors without regard to the effect of the Usury Statute and is entitled to charge the legal rate of interest on the principal sum borrowed from date. The rule laid down in Post v. Building & Loan Ass'n, 97 Tenn. 408, 37 S. W. Rep. 216, is invoked to sustain this contention. It appears, however, that the Usury Statute of Tennessee is unlike ours. It does not provide a forfeiture of all interest as ours does, but only that part which is usurious—and allows a recovery of interest at the legal rate (§2710 Code of Tenn., 1884). We are governed by our own statutes, and where a contract is usurious no interest can be collected. If the allegations of the answer are proven to be true, among others, that there was no stock issued, and none intended to be issued, and that this was only a device to evade the usury laws, then it would seem that all the payments made by the appellants should be credited on the principal debt. But if stock was actually issued or it was intended it should be issued, payments made as dues on stock should not be credited on the principal debt, but

should be applied to the stock, and in that event appellants would be entitled to a pro rata share of the proceeds of the stock in the final settlement by the Receiver.

We are of the opinion the exceptions to the answer should not have been sustained, and, therefore, the order appealed from is reversed.

SHACKLEFORD, C. J., AND TAYLOR, HOCKER AND WHITFIELD, J. J., concur.