The Inn at South Palm Beach, Inc., and Chas. H. Warwick, Jr., as Successor Trustee, v. Albert Jacobs, et al.

155 So. 835.

Division B.

Opinion Filed June 19, 1934.

*Paty, Warwick & Lake,* for Appellants;

*Chillingworth & Simon,* for Appellees.

Buford, J.—The appeal here is from a final decree in foreclosure suit. The suit was filed by certain note holders. The mortgage was executed by Frederick G. Schwarz and Anne Schwarz, his wife, to Palm Beach Guaranty Company dated December 1, 1921, and recorded in Public Records of Palm Beach County, Florida, in Mortgage Book No. 48 on page 405. A satisfaction of the mortgage was executed by Mortgage & Securities Company, which company was the assignee of the mortgagee, Palm Beach Guaranty Company, under date of January 11, 1929, and the satisfaction of mortgage was recorded in Public Records of Palm Beach County in Satisfaction Book No. 60, page 426. Prior to the satisfaction of mortgage the notes which evidenced the indebtedness sought to be satisfied by foreclosure had been assigned by Mortgage & Securities Company to various individuals and their suit was for the purpose of having the satisfaction of mortgage held to be null

and void and to foreclose the mortgage *pro tanto* for the amount of the notes held by them.

The decree was in favor of the complainants.

Their suit was based upon the principles of law enunciated in Taylor v. American National Bank, 63 Fla. 631, 67 Sou. 678; McClure v. American National Bank of Pensacola, 67 Fla. 22, 64 Sou. 427; Evans v. Gainesville National Bank, 80 Fla. 84, 85 Sou. 659, and Foreman *et al.* v. First National Bank of Quincy, 72 Fla. 61, 72 Sou. 460.

The decree appealed from followed the principles of law enunciated in those cases.

We think this case is to be differentiated from the case above referred to.

The record shows that the mortgage indebtedness was paid to Mortgage & Securities Company from the proceeds of a tornado insurance policy. The notes sued on were in the following form, to-wit:

"United States of America
"First Mortgage Note
"Number 24                                                Dollars 500
            "Secured by REAL ESTATE
        "Negotiated by FREDERICK G. SCHWARZ
                                "December 1st, 1921

"June 1, 1930, after date for value received I promise to pay to the order of Palm Beach Guaranty Company at the office of the Mortgage & Securities Company, at New Orleans, La., the principal sum of Five Hundred Dollars in current money of the United States of America with interest until the maturity hereof at the rate of Eight per cent per annum, payable semi-annually according to the terms of 17 coupon notes of even date herewith hereunto attached, executed by me and numbered from one to 17 inclusive.

"This note shalll bear interest at the rate of Eight per cent per annum after maturity and in case any installment of interest is not paid when and where due, the Principal of this note, together with the accrued interest thereon, shall at once become due and payable without further notice, at the option of the holder.

"This note and 17 coupon notes hereunto attached are secured by First Mortgage on improved real estate located in the County of Palm Beach, State of Florida.

"Frederick G. Schwarz (L. S.)

"This note is subject to prepayment in accordance with the terms of the deed of trust securing the same, (10 cents in U. S. R. R. stamps attached and cancelled.)"

The assignment was as follows:

"For value received we hereby assign and transfer the within Note, together with all my right, title and interest in and to the Mortgage securing the same to Mortgage & Securities Company.

"Palm Beach Guaranty Co.,
"Dec. 24, 1921.                "D. F. Dunkle,
                                    V. Pres."

A guaranty agreement was endorsed on each note in the following language:

"GUARANTY AGREEMENT

"As the owner of this note by purchase from the maker, and as an inducement to third persons to purchase the same, the undersigned, under authority from its Board of Directors, hereby binds and obligates itself in favor of all subsequent holders that in the event of any default in the payment of any installment of interest on this note, or in the payment of the principal thereof when due, it will, at the option of the holder, within twelve months from the final termination of the necessary proceedings brought to

foreclose the mortgage securing this note issue, purchase this note from the holder thereof for an amount equal to the principal and accrued unpaid interest thereon, less any amounts, which may have been paid to the holder of this note either by order of court or otherwise, out of the proceeds resulting from the sale of the property mortgaged to secure this note; provided, that if the law of the state where the property mortgaged is situated allows a period of redemption, then the terms of this obligation shall not begin to run until such period of redemption has expired.

"Mortgage & Securities Company
"New Orleans, Louisiana,       "By Jas. P. Ohlsen,
Jan. 31, 1922.       "Assistant Treasurer."

The notes were endorsed as follows:

"Pay to the order of ..........................................................
*without recourse* except in accordance with the terms of the guarantee stamped hereon.

"Mortgage & Securities Company
By Jas. P. Ohlsen,
*"Asst. Treas."*

The interest coupon was in the following language:

"$20.00       December 1st, 1921

"On the 1st day of December, 1929, for value received I promise to pay to the order of Palm Beach Guaranty Co. the sum of *Twenty* Dollars with current money of the United States of America, at the office of the Mortgage & Securities Company, at New Orleans, La., being for an installment of interest due on my note for $500.00 of even date herewith. This note bears interest at the rate of Eight per cent after maturity.

"Note No. 24       "FREDERICK G. SCHWARZ
"Coupon No. 16
"Negotiated by    (Endorsed on back as follows:)

"Pay to the order of...............
"Palm Beach Guaranty Co.
"D. F. Dunkle
"V. Pres."

The amount of the interest coupons and the dates varied, as was necessary in such cases.

The mortgage deed contained the following clause:

"*This Indenture,* Made this 1st day of December in the year of our Lord One Thousand nine hundred and twenty-one between Frederick G. Schwarz, joined by his wife, Anne Schwarz, residents of West Palm Beach in the County of Palm Beach, Florida, hereinafter called the mortgagor, which term as used in every instance herein, shall include their heirs, executors, administrators, successors and legal representatives wherever the context so requires or admits, and Palm Beach Guaranty Company, a corporation organized and existing under the laws of the State of Florida, hereinafter called the mortgagee, which term as used in every instance herein shall include its successors, legal representatives and assigns, wherever the context so requires or admits:

"WITNESSETH: That the said mortgagor is justly indebted to said mortgagee in the sum of Thirty Thousand Dollars ($30,000.00) secured to be paid by thirty-nine (39) certain promissory notes of even date herewith, payable to Palm Beach Guaranty Company at the office of Mortgage & Securities Company, of New Orleans, Louisiana, in current money of the United States of America, of the present standard of weight and fineness and further described as follows:"

(Then follows a description of the notes with the due dates thereof.)

"Bearing interest from date at eight per centum (8%)

per annum, as therein provided, said interest payable semi-annually, on the first days of June and December in each and every year until the maturity of said notes, and represented by interest coupons attached thereto, and bearing interest after maturity at the rate of eight per centum (8%) per annum, it being expressly agreed that the whole of the said principal sum may become due after default in the payment of any installment thereof, interest, taxes, assessments, water rate or insurance as hereinafter provided."

(Then follows the conveyance clause, with description of the property.) Then the habendum clause and then the warrant of seizen.

The insurance clause is as follows: "That said mortgagor will keep the buildings on said premises constantly insured for the benefit of the mortgagee, against loss by fire and tornado, in such manner and in such companies as may be satisfactory to the mortgagee, until the debt hereby secured is fully paid, and keep such policies constantly assigned or pledged to and deposited with mortgagee, and will deliver renewals thereof to the said Palm Beach Guaranty Company at its office in West Palm Beach, Florida, one week in advance of the expiration of the same, marked paid by the agent or company issuing the same. Provided that fire insurance shall always be carried in the sum of not less than Thirty Thousand Dollars ($30,000.00) and that tornado insurance shall always be carried in the sum of not less than Twenty Thousand Dollars ($20,000.00). In the event the mortgagor shall for any reason fail to keep the said premises so insured or fail to deliver the policies of insurance to the mortgagee, or fail to pay the premiums thereon, the mortgagee, if it so elects, may have such insurance written and pay the premiums thereon, and any premiums so paid shall

be secured by this mortgage and repaid by the mortgagor within ten days after payment by the mortgagee. In default thereof, the whole principal sum and interest then accrued on said promissory notes secured hereby and insurance premiums, with interest on such sum paid for such insurance from the date of payment, may be and shall become due, at the election of the mortgagee, anything herein to the contrary notwithstanding.

"6. That should the mortgagee by reason of any such insurance against loss by fire or tornado as aforesaid, receive any sum or sums of money for any damage by fire or tornado to the said building or buildings, such amount may be retained and applied by it toward payment of the amount hereby secured; or the same may be paid over, either wholly or in part, to the said mortgagor to enable such party or parties to repair said buildings or to erect new buildings in their place, or for any other purpose or object satisfactory to the mortgagee, without affecting the lien of this mortgage for the full amount secured thereby before such damage by fire or tornado or such payment ever took place."

The manner of payment as provided in the mortgage was as follows:

"11. That for the purpose of providing for the prompt payment of the principal and interest due on the notes issued hereunder and secured hereby, as and when the same shall mature, mortgagor binds and obligates himself to deposit with the Mortgage & Securities Company, of New Orleans, Louisiana, an amount sufficient to cover the principal and interest due hereunder at least sixty days before same shall become due."

The record shows that it was contemplated at the time the mortgage was made that it, together with the notes which it

secured, would be assigned to Mortgage & Securities Company and for that reason the notes were made payable at the office of Mortgage & Securities Company of New Orleans, Louisiana. It will be noted that each of the notes bore the statement, "This note is subject to payment in accordance with the terms of the deed of trust securing the same."

The material stipulation of the terms of payment contained in the trust deed was "That for the purpose of providing for the prompt payment of the principal and interest due on the notes issued hereunder and secured hereby, as and when the same shall mature, mortgagor binds and obligates himself to deposit with the Mortgage & Securities Company of New Orleans, Louisiana, an amount sufficient to cover the principal and interest due hereunder at least sixty days before the same shall become due." Every note-holder was charged with full knowledge of this agreement in the mortgage and by accepting the note with this provision appearing therein he took it subject to its being discharged by payment to Mortgage & Securities Company of New Orleans, Louisiana. The mortgage specifically provided, "that should the mortgagee by reason of any such insurance against loss by fire or tornado as aforesaid receive any sum or sums of money for any damage by fire or tornado to the said building or buildings, such amount may be retained and applied by it toward the payment of the amount hereby secured." An amount sufficient to discharge the mortgage was received by the holder of the mortgage from the insurance company and the insurance company thereby discharged its liability under its policy. The terms of the notes gave the note-holders ample notice that this course could be pursued and the debt discharged and by accepting the notes under the terms and conditions expressed therein they were

bound by this condition incident to the mortgage and, in effect, thereby confirmed Mortgage & Securities Company, their agents, to receive the payment and discharge the obligation.

Having accepted these conditions, the note-holders are not in position to repudiate the action of Mortgage & Securities Company or to deny the authority of Mortgage & Securities Company to receive payment of the obligation in their behalf. The mortgagee was, under the facts disclosed, the appointee of the note-holders to receive and deposit any insurance money received under the terms of the mortgage. See Jones on Mortgages, 5th Ed., Vol. 1, Section 406, wherein it is said:

"When a policy is taken in the name of the mortgagor, but the insurance is made payable to the mortgagee in case of loss, the contract is with the mortgagor, and is for the insurance of his interest, and the mortgagee can recover only in case the mortgagor could have done so, unless the policy contains special provisions in favor of the mortgagee. The making of the policy payable to the mortgagee is regarded as an appointment to receive any money which might become due from the insurers by reason of any loss which the mortgagor might sustain. It is still a contract to indemnify the mortgagor against a loss, and not a contract to indemnify the mortgagee. Thus, when a mortgagor has procured a policy, 'as his interest might appear,' the loss, if any, payable to the mortgagee as collateral security for the mortgage debt, the mortgagee has no authority to consent to the cancellation of the policy; and if he does so, and takes out a new policy in his own name, he will have only the same rights under it that he had under the old policy."

See also McCormick v. Johnson, 134 Kans. 153, 4 Pac.

(2nd) 421; Hall v. Goldsworthy, *et al.,* 136 Kans. 247, 14 Pac. (2nd) 659. In the latter case the Court said:

"It is contended that the Court erred in its conclusion that the bondholders must bear the loss, if any, with respect to the payment of $167.31 to the Guarantee Title & Trust Company, which had become insolvent before distribution of the fund had been made to the bondholders. In other words, it is contended that the payment of the money to the trust company did not constitute a payment on the indebtedness but was merely a deposit. The solution to this question is found in the construction of the instrument. The note is made payable at the office of the trust company. The names of the bondholders are not disclosed. The company is the trustee. The trustee has the power, on the payment of the indebtedness, to release and discharge the mortgage lien and, in event of default, to maintain an action to foreclose the mortgage. It is more than a depository. It is in fact the plaintiff in this case. The bondholders are not parties. They are relying upon the terms of the instrument vesting the trustee with the power to enforce the obligation. It hardly seems consistent to permit the trustee to maintain an action to enforce collection and at the same time charge the mortgagor with the failure of the trustee to distribute the fund to the bondholders. In the case of McCormick v. Johnson, 134 Kan. 153, 4 P. (2nd) 421, this Court held that the payment of the fund to the trustee relieved the mortgagor of the responsibility of the distribution of the fund."

For the reasons stated, the decree appealed from should be reversed and the cause remanded with directions to dismiss the bill of complaint. It is so ordered.

Reversed.

WHITFIELD, P. J., and BROWN, J., concur.

DAVIS, C. J., and TERRELL, J., concur in the opinion and judgment.