WILL OF CHURCH: FIRST WISCONSIN TRUST COMPANY, Trustee, Appellant, vs. SCHULTZ and others, Respondents.

*February 5—June 2, 1936.*

For the appellant there was a brief by *Miller, Mack & Fairchild,* and oral argument by *Leon F. Foley,* all of Milwaukee.

For the respondents there was a brief by *Timothy J. Hannan,* attorney, and *Marvin M. Fein* of counsel, all of Milwaukee, and oral argument by *Mr. Hannan.*

The following opinion was filed March 31, 1936:

FRITZ, J. The following facts, established without dispute, suffice for a consideration of this appeal: In 1930, the appellant, First Wisconsin Trust Company (hereinafter called the "Trust Company"), was appointed trustee of a trust under the will of George W. Church, deceased, and acted in that capacity until 1933. Among the assets of the estate received by the Trust Company, as trustee, were two bonds of the par value of $1,000 each, maturing October 1, 1937, and issued by the St. Mary Magdalen Congregation (hereinafter called the "Congregation"), as part of an issue secured by a trust mortgage or deed to Hackett, Hoff & Thiermann, Inc. (hereinafter called "Hackett, Inc."), as trustee. Provisions in the bonds stated that they were issued under and secured by the trust mortgage or deed, "to which deed of trust reference is hereby made with the same effect as though recited at length herein, for the description of the property mortgaged, the nature and extent of the security, the rights of the holders of the bonds, and the terms and conditions upon which the bonds are issued, held and secured, and may, before their fixed maturities, be declared at once due and payable, and the manner of prepayment before maturity;" and that the bonds "may be redeemed by St. Mary Magdalen Congregation prior to maturity at any interest-payment date upon payment of the principal hereof, all interest due and accruing to the date of such respective redemption, and if redemption shall be made before maturity hereof, a premium of one per cent (1%) of the principal hereof, as

in said trust deed provided." Among the "terms and conditions" in the trust mortgage, and by reference thereto in the bonds made part of the latter, and upon which they were "issued, held and secured," and by virtue of which they could "before their fixed maturities be declared at once due and payable," and which related to "the manner of prepayment before maturity," there were the following provisions: "The trustee to receive from the first party and apply according to the terms hereof or terms of said bonds, any and all sums of money herein covenanted and agreed to be paid by the first party; and upon complete satisfaction of all of the terms of this instrument or said bonds, and proper and satisfactory proof thereof made to said trustee, to execute, acknowledge and deliver to said first party a good and sufficient release of this mortgage, and to deliver to first party all paid and canceled bonds in its possession;" ". . . upon payment to the trustee of all amounts due on said bonds and this mortgage, to execute, acknowledge and deliver to the said party of the first part, its successors and assigns, a release of this mortgage which shall be binding upon all holders of said bonds, whoever they may be;" "the party of the first part shall have the right, by the giving of the notice, as hereinafter provided, on any interest-payment date, to take up and pay five thousand dollars ($5,000) or more of the said unmatured bonds outstanding and unpaid by paying the principal thereon with all interest accrued and unpaid to the date so fixed for prepayment, together with a premium of one per cent (1%) of the principal of said bonds so taken up and paid. Upon receipt of written notice from the first party at least sixty (60) days prior to such interest date on which it is intended so to pay such bonds before maturity, together with the principal of the bonds so intended to be paid, and interest to date of such interest day and said premium, the said trustee may draw and select by lot from all of the unmatured bonds then outstanding, a number of bonds equal

in principal amount to the amount of cash deposited," and notify the holders of such allotted bonds by mail "of such intended prepayment and the date thereof, or to publish such call of such bonds so allotted and drawn, . . . said notice to be published by the trustee at the expense of the said party of the first part, for three (3) weeks at least once each week, the last publication to be at least one (1) week before the date for such prepayment, in at least one (1) newspaper of general circulation in the city of Milwaukee, state of Wisconsin; and all of such bonds, when and as paid and the interest coupons thereunto belonging shall immediately be canceled by the trustee and delivered so canceled, to the party of the first part. In case of such requests properly made, together with the payments to be paid to the trustee and notice is so given by said trustee, then and in that event such bonds shall so mature and no interest shall accrue on the same after such date of maturity." "It is agreed, that when the bonds hereby secured have matured by their terms or by the calling of them in the manner as herein provided, prior thereto, and when there has been paid to the trustee the entire amount of principal of all unpaid bonds and interest to date of such maturity, and there also has been paid to the trustee all claims it may have thereunder, that then and in that event, the trustee shall on demand of the first party discharge, satisfy and release this trust deed or mortgage, and when that is done, the above-described premises shall be considered fully released and discharged from this trust deed or mortgage, and the said first party shall then not be held responsible for the application of the amount so paid to the trustee."

On January 28, 1931, the Congregation duly served written notice on Hackett, Inc., pursuant to the trust mortgage, that it would exercise its right to and would, on the next interest-paying date, April 1, 1931, pay all of its outstanding bonds, then amounting to $113,000, by paying the principal

and interest, and the premium due on such prepayment. Thereupon, in accordance with the provisions of the trust mortgage, notice of call for redemption was published by Hackett, Inc., on March 4, 11, and 18, 1931, in the "Legal Proposals" section of the Milwaukee Journal, which was a prominent newspaper of general circulation in the city of Milwaukee.

On January 31, 1931, the Congregation paid $14,000 to Hackett, Inc., to pay on bonds and interest; and by March 30, 1931, Hackett, Inc., had paid out $15,300 for that purpose. On March 31, 1931, the Congregation paid to Hackett, Inc., $99,000, plus $3,035 for interest, and $1,100 for the premium to redeem the balance of the bonds. Out of that $99,000 payment, Hackett, Inc., used either $22,000 or $23,300 immediately in redeeming bonds, and deposited $55,000 in an account called "Trust Account No. 1," which it had at the Marine National Exchange Bank. Other funds were also deposited in that trust account, and Hackett, Inc., issued checks against it for other purposes than the payment of the Congregation bonds, but $33,000 of that $55,000 deposit were checked out to redeem Congregation bonds up to April 23, 1931; and, until April 27, 1931, there remained a balance of $5,982.27 in that account. Then, on April 27th and 28th, Hackett, Inc., checked out $5,685 for other purposes, leaving a balance of $297.27, which remained in that account when Hackett, Inc., was adjudicated a bankrupt on June 8, 1931. Between April 1 and April 23, 1931, Hackett, Inc., had paid $60,100 in thirty separate payments on the presentation of the Congregation bonds. No bonds were redeemed after that date, and $37,600 remained outstanding.

On March 31, 1931, Hackett, Inc., as trustee under the trust mortgage, executed a release and satisfaction thereof. That release was recorded in the office of the register of deeds of Milwaukee county on April 1, 1931, and was in-

cluded the next day in a list of recorded releases published in the Daily Reporter, a newspaper circulated in the city of Milwaukee.

Through the First Wisconsin National Bank, the Trust Company promptly collected from Hackett, Inc., the interest due April 1, 1931, but it never presented the bonds for payment; and it did not learn of the notice and the proceedings for the prepayment thereof until after Hackett, Inc., was adjudged a bankrupt. It received $43 on each bond as a dividend paid in October, 1932, by the trustee in bankruptcy of Hackett, Inc.

During the months of March and April, 1931, the Trust Company had one of its employees examine publications in the Chicago Journal of Commerce, Chicago Tribune, Milwaukee Sentinel, Daily Reporter, and the Sinking Fund Notices and Redemption Calls Section of the Standard Statistics Company, Inc., and check all notices therein against an index of all bonds held by it, but no notice of the call of the Congregation bonds for redemption had appeared in those publications. The Trust Company's employee failed to see the publication in the Daily Reporter that release of the trust mortgage was recorded on April 1, 1931, in the office of the Milwaukee county register of deeds; and, as he did not examine the Milwaukee Journal, he did not see the notice of the call for redemption which was published therein on March 4, 11, and 18, 1931.

The trial court found that the Trust Company "failed and neglected to present" the bonds to Hackett, Inc., for payment on April 1, 1931, or at any other time; and further concluded that, "as a result of said failure and neglect" of the Trust Company, "as such trustee, to present" the bonds to Hackett, Inc., "for payment pursuant to the notice published in the Milwaukee Journal on March 4, 11, and 18, 1931, it should be held responsible to petitioners, and should be charged in its final account as such trustee" with $1,914, as

the present face value of the bonds, together with the one per cent premium and interest from April 1, 1931.

In appealing from the judgment entered upon those conclusions of law, the Trust Company contends that neither the evidence nor the findings disclose any breach of duty for which it should be held liable; that it is liable only if it was negligent and its negligence was the proximate cause of the loss; that there is no finding or evidence that the period of twenty-three days (from the 1st to the 23d day of April) was an unreasonable period for it to learn of the call and to present the bonds for payment; and that there is no evidence or finding that it was negligent in not knowing of the call for redemption.

Although, as is stated in appellant's brief, a trustee is not the insurer or guarantor of the payment of securities turned over to it as part of the assets of an estate intrusted to it for administration, it is, as appellant concedes, liable for failure to exercise due diligence and at least ordinary care to prevent an avoidable loss in respect thereto. And due diligence and ordinary care in the performance of its duties by a trustee "requires the exercise of a high degree of fidelity, vigilance, and ability." *Estate of Allis,* 191 Wis. 23, 29, 209 N. W. 945, 210 N. W. 418. "Especially," as was said in that case, "is this true when the trustee is a company organized for the purpose of caring for trust estates, which holds itself out as possessing a special skill in the performance of the duties of a trustee, and which makes a charge for its services which adequately compensates it for a high degree of fidelity and ability in the administration of a trust estate." See also Restatement, Trusts, § 174, and comment *d* to § 227; 2 Quindry, Bonds and Bondholders, § 574.

Although it is true that the trial court in its findings and conclusions stated merely the ultimate fact that the Trust Company had entirely failed and neglected to present the bonds for payment pursuant to the published notice of the

call for redemption, and that as a result of that failure and neglect it was responsible for the loss on the bonds, and did not, in that connection, also expressly state that the Trust Company's admitted lack of timely knowledge of that notice was due to its failure to ascertain what it could and should, in the exercise of ordinary care, have ascertained in that regard, it is obvious that the court's conclusion, that the loss resulted because of the ultimate negligent failure to present the bonds, was only possible, and was necessarily predicated upon the prior admitted failure of the Trust Company to acquire the knowledge ascertainable in the exercise of ordinary care. Its negligent failure to properly perform its duties in that preliminary respect, in order to realize on the bonds, was necessarily part and parcel of the neglect on its part, which finally and unquestionably resulted in the loss because of its failure to perform the ultimate act of presenting the bonds in time to obtain payment thereof. As the Trust Company was undoubtedly acting in good faith, its failure to present the bonds for payment during the twenty-seven days following April 1st, that funds were available in the hands of Hackett, Inc., for the redemption thereof, can only be ascribed to its admitted failure, during the period of twenty-seven days preceding April 1st in which the notice of call had been published in the Milwaukee Journal on March 4th, 11th, and 18th, respectively, and when the fact of the recording of the release of the mortgage on April 1, 1931, was published in the Daily Reporter, to learn, in the exercise of ordinary care and due diligence on its part, that the bonds had been called for payment, and would be paid on April 1, 1931, upon presentation to Hackett, Inc.

The undisputed fact that holders of two thirds, in amount, of the bonds apparently acquired sufficient notice, and were prompted thereby to act and collect on their bonds within fifty days after the first publication of the notice on March 4,

1931, or thirty-five days after the last publication thereof, certainly demonstrates, and warrants holding that the Trust Company as a skilled trustee, specializing in that capacity, ought, in the exercise of ordinary care, to have known of the notice of the call and the recording of the release of the trust mortgage, as published in the Milwaukee Journal and the Daily Reporter, respectively; and that the twenty-seven-day period from April 1 to April 27, 1931, was more than ample to enable the Trust Company, in the exercise of due care and diligence on its part, to learn of the call, and to present and collect on the bonds. The mere fact that the Trust Company did not search the Milwaukee Journal daily for such an announcement might not, standing alone, necessarily warrant holding that it was negligent in that respect. But the fact that it failed to acquire knowledge of the call for redemption from the publication of those notices in three successive weeks, although the holders of two thirds in amount of the bonds acquired such knowledge and acted upon it in time to realize on their bonds, and such knowledge was equally available to it, well warrants holding that the Trust Company's failure to acquire that knowledge constituted negligence, which resulted in its failure to present and to realize on the bonds. Its failure to perform its duties in those respects cannot be excused on its contention that it was impracticable for it to examine publications in twenty-two papers which were listed on the trial as newspapers published in the city of Milwaukee, and that, therefore, it could not be required to do so. With but four or five exceptions, those papers, as is apparent from most of their names, were either denominational, foreign language, or mere neighborhood papers, that could not be considered eligible under the mortgage provision requiring publication of the notice of redemption in a newspaper of "general circulation in the city of Milwaukee." Neither such denominational, foreign language,

or mere neighborhood papers, nor the Chicago Journal of Commerce, the Chicago Tribune, the Notices and Redemption Calls Section of Standard Statistics Company, Inc., nor Moody's Manual of Investments were eligible for the publication of the notice required under that mortgage provision. There would certainly be little reason for one charged with the duty of exercising ordinary care to learn of such a notice published in a newspaper of general circulation in Milwaukee, to examine or rely merely upon any such publications of limited circulation or foreign origin for acquiring knowledge of the prescribed publication of notice of a call of bonds so limited in amount, and of such a local character, as the bonds involved herein. It may be true, as the Trust Company contends, that it was holding (as trustee) one thousand seven hundred other issues of bonds, as to which notices of redemption might have been given in four hundred or more publications, and that it would be impracticable for it to examine all of them. Nevertheless, that likewise does not preclude holding that, as to the bonds in suit—issued and secured as they were by a mortgage recorded in the city and county in which the mortgage trustee and the Trust Company had their places of business—the latter was negligent in failing, in the exercise of ordinary care, to learn, by reason of the publications of the notice of redemption in the Milwaukee Journal, admitted to be "one of the prominent newspapers in Milwaukee," and by reason of the publication of the fact of the recording of the mortgage release in the Daily Reporter, which appellant's employee examined daily as to such matters, that those bonds had been duly called and were to be presented for payment on April 1, 1931. It would certainly seem, that professional trustees, who obtain appointments as such because, by reason of their large volume of such business and consequently better facilities, they are considered better qualified for managing trust estates and investments than

private individuals, and who function as such trustees largely for local estates having local investments, can reasonably be expected, in the exercise of ordinary care in respect to securities held by them in trust, which were issued locally and are subject to call upon notice published in but one newspaper "of general circulation in the city," to follow the status of such securities by carefully examining at least the more prominent of the five or six newspapers of general circulation in that locality.

The Trust Company was not relieved from that responsibility by the provisions in Church's will which gave it discretionary powers in several respects, such as the retention of securities not eligible under the statutes for trust fund investments; and which provided that in case loss shall accrue by the exercise of any discretion vested by the will in the trustee, that such loss shall not be charged or imputed to it "excepting only for bad faith shown in the exercise of its discretion, or for failure in such exercise to use such reasonable care and judgment as prudent men ordinarily apply to their own business affairs." Under that exception clause, the Trust Company was certainly not relieved from responsibility for its failure to exercise "such reasonable care and judgment as prudent men ordinarily apply to their own business affairs." It is in that very respect that the Trust Company failed in regard to the bonds in suit. Its failure to learn of the noticed redemption of the bonds and to collect therefor, was not merely the result of the erroneous exercise of any discretion on its part. There was no room, whatsoever, for the exercise of any discretion on its part in respect to keeping itself informed as to an authorized prepayment of the bonds, and the presentation and collection of duly called bonds with reasonable promptness. Upon their duly becoming redeemable and due on April 1, 1931, and the payment of the money therefor by March 31, 1931, to Hackett, Inc., as the mortgage trustee,

and the latter's acceptance thereof, in consideration of its authorized release of the mortgage, the Trust Company had no discretion and was not authorized to do anything else than to present and collect on the bonds from Hackett, Inc., which was ready, able, and willing at all times between April 1st and April 27th to honor the bonds on presentation.

The Trust Company also contends that, in order to hold it liable, it was necessary to find "that the bonds were duly called and the fund for their payment duly deposited with the trustee under the mortgage, as the agent of the bondholders, so as to make the fund the property of the bondholders and the resulting embezzlement a loss to them and not to Magdalen Congregation. . . . Until it is determined, it does not appear that the beneficiaries suffered any loss."

In respect to that contention, provisions in the trust mortgage necessitate holding that the payment of the bonds by the Congregation to the mortgage trustee was received by the latter as the agent of the bondholders; that the money so paid, thereupon became the property of the bondholders, and that trustee's loss or embezzlement of part thereof resulted in loss to such of them as had failed to present their bonds, and not in any loss to the Congregation. Among the trust mortgage provisions there were, in addition to the provisions hereinbefore quoted, under which the mortgage trustee was authorized to receive from the Congregation all money paid by it on the bonds and to apply such payments according to the terms of the bonds, and to execute, upon the payment of all amounts due thereunder, a good release thereof "which shall be binding upon all holders of said bonds, whoever they may be," the following provisions: "It is agreed, that when the bonds hereby secured have matured by their terms or by the calling of them in the manner as herein provided, prior thereto, and when there has been paid to the trustee the entire amount of principal of all unpaid bonds and interest to date

of such maturity, and there also has been paid to the trustee all claims it may have thereunder, that then and in that event, the trustee shall on demand of the first party discharge, satisfy and release this trust deed or mortgage, and when that is done, the above-described premises shall be considered fully released and discharged from this trust deed or mortgage, and the said first party shall then not be held responsible for the application of the amount so paid to the trustee." Those provisions clearly empowered and constituted Hackett, Inc., the trustee or agent of the bondholders to receive payment of the bonds, and to release the mortgage for and on their behalf; and, in that connection, the mortgagor was expressly absolved of any responsibility "for the application of the amount so paid to the trustee." Thus, the money paid by the Congregation to Hackett, Inc., was received by the latter as the agent of the bondholders and the Congregation was not responsible thereafter for the proper application of the amount so paid to the trustee. *Morley v. University of Detroit* (1933), 263 Mich. 126, 248 N. W. 570; *Morley v. University of Detroit* (1934), 269 Mich. 216, 256 N. W. 861; *McCormick v. Johnson,* 134 Kan. 153, 4 Pac. (2d) 421; *Hall v. Goldsworthy,* 136 Kan. 247, 14 Pac. (2d) 659; *Manchester v. Sullivan,* 112 Conn. 223, 152 Atl. 134; *Masonic W. & O. Home v. Title Ins. & T. Co.* 248 Ky. 787, 59 S. W. (2d) 987; *Fidelity & Columbia Trust Co. v. Schmidt,* 245 Ky. 432, 53 S. W. (2d) 713; *Inn at South Palm Beach, Inc., v. Jacobs,* 115 Fla. 486, 155 So. 835.

As the money paid by the Congregation was sufficient to redeem and discharge the bonds, with the interest and premium, and was accepted by Hackett, Inc., as trustee in full payment thereof, without any objection on its part because it had not been received at least sixty days prior to the date of the call for redemption, neither a bondholder, nor the Trust Company, as trustee for a bondholder, is entitled to avoid

the legal consequences of that accepted payment, by reason of the fact that the Congregation, in duly giving the sixty-day notice to Hackett, Inc., of its intention to prepay the bonds, did not also make that payment "at least sixty days prior to that date of redemption." The obvious purpose of the latter provision was merely to assure Hackett, Inc., that the necessary funds would be in its possession in time to enable it to pay out the money on the redemption date upon the presentation of the called bonds. As neither Hackett, Inc., nor the bondholders were to profit in any manner by using that money during that sixty-day period, neither of them sustained any pecuniary or material loss by reason of the Congregation's paying the last of that money to the mortgage trustee on the last, instead of the first, day of that sixty-day period. In then accepting that payment as the mortgage trustee, Hackett, Inc., waived that sixty-day requirement as to payment; and, as all of the money was paid by the Congregation in time to have it available for distribution by the mortgage trustee to the bondholders on April 1, 1931, no one concerned was prejudiced by the delay, and the legal efficacy of the call for redemption was not impaired thereby.

*By the Court.*—Judgment affirmed.

A motion for a rehearing was denied, with $25 costs, on June 2, 1936.