FIRST TRUST COMPANY, SUCCESSOR-TRUSTEE, APPELLANT,
v. GEORGE C. MARYOTT ET AL., APPELLEES.

283 N. W. 518

FILED JANUARY 20, 1939. No. 30443.

*Sterling F. Mutz* and *Robert S. Stauffer,* for appellant.

*Alfred D. Raun* and *Perry, Van Pelt & Marti, contra.*

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE, CARTER and MESSMORE, JJ.

ROSE, J.

This is a suit in equity to foreclose a mortgage on the real estate described in the petition.

George C. Maryott and Anna M. Maryott, mortgagors, defendants, borrowed from the Lincoln Safe Deposit Company February 23, 1924, $16,000, evidenced the debt by 16

bonds of $1,000 each and secured them by a mortgage on 80 acres of land in Thurston county. The debt was subsequently reduced by payments to $8,000 prior to March 1, 1933. The mortgage and bonds were assigned by the Lincoln Safe Deposit Company to the Lincoln Trust Company September 18, 1928. The two companies named, while engaged in transacting business as trustees, were adjudged bankrupts July 9, 1932, and, by order of court, the First Trust Company became their successor-trustee, and in that capacity brought this foreclosure suit as plaintiff, alleging that the unpaid debt of the Maryotts, mortgagors, was $9,090.64, May 13, 1932, and that no part thereof has been paid except $1,872.50. Judgment for the difference was demanded with a prayer for foreclosure.

In an answer to the petition defendants pleaded payment of $7,490 on the debt after it was reduced by payments to $8,000, and offered to pay the difference between those items with interest. The reply to the answer was a general denial. .

Upon a trial of the cause the district court found that defendants had paid $7,490 on the 8,000-dollar debt and that they still owed $632.12 with interest from June 24, 1932. Defendants were permitted to discharge the unpaid debt and the mortgage by payment of the amount found to be due, but, in the event of default in such payment, foreclosure was ordered. Plaintiff appealed.

The issue on appeal, as in the trial court, was the payment of $7,490 on the debt secured by the mortgage after it was reduced by payment to $8,000. The contentions of plaintiff, in substance, are that eight bondholders are the beneficial owners of the security; that they never received the alleged payment; that the bonds in controversy were not surrendered to defendants or indorsed as paid and were never paid; that the First Trust Company, plaintiff, is the owner and holder of the mortgage as successor-trustee of the two bankrupt companies for the benefit of the eight bondholders.

The position of defendants is that they paid to the Lin-

coln Trust Company before it became a bankrupt, while it was in possession of the bonds with authority to receive payment, $7,490, and that this was payment of the mortgage to that extent.

It is shown without dispute that defendants had fire insurance of $8,000 in four insurance companies on a store building destroyed by fire. The fire loss was adjusted at $7,490, each of the four insurers paying by draft $1,872.50. George C. Maryott, defendant, indorsed the drafts and sent them by mail to the Lincoln Trust Company before it was adjudged a bankrupt. Proceeds of one of the drafts were in fact credited *pro rata* on the bonds. Each of the bonds contains an agreement in this form:

"All payments to be made on this bond, whether principal or interest, shall be made to said Lincoln Safe Deposit Company, for the benefit of the holder thereof."

The parties to the mortgage entered into an agreement March 19, 1928, extending the time for payment from March 1, 1928, to March 1, 1933, making "both interest and principal payable at the office of the Lincoln Trust Company in Lincoln." This extension agreement is part of the petition which alleges that the successor-trustee "is given full power and authority as such trustee to collect and receipt for the interest and principal of such loans."

March 29, 1932, mortgagors gave additional security for the bonds and unpaid debt of $8,000 by the execution of another mortgage for that amount on 16 acres of additional land in Thurston county. This mortgage was payable to the Lincoln Safe Deposit Company, mortgagee. If others should become holders of the bonds, the Lincoln Trust Company was authorized by the mortgage to make collection in the event of default, to satisfy the mortgage, if paid, and to distribute the proceeds to such bondholders.

The bonds and the mortgage were continuously in possession of the Lincoln Trust Company or its successor-trustee, but the beneficial interests therein were assigned to the eight beneficiaries by means of certificates of participation in those instruments. The certificates in addi-

tion to the assignments contained on their faces the following conditions:

"This is to further certify that said Lincoln Trust Company retains the legal title to said bond and mortgage in trust for the use and benefit of the holders of said participation certificates, for the purpose of collecting same and enforcing payment thereof, and distribution of the proceeds thereof equally and ratably among the holders of said participation certificates, according to their several interests."

The fire insurance policies provided that loss or damage, if any, shall be payable to Lincoln Safe Deposit Company, mortgagee, or trustee, "as interest may appear."

The two bankrupt companies were for all practical purposes one corporation. The business transactions were similar. Their offices were in the same building. Their officers were the same. The Lincoln Trust Company owned all the stock of the other and kept the records of both. Identification of the two as one was recognized in former litigation. *First Trust Co. v. Danielson,* 132 Neb. 141, 270 N. W. 680; *Kansas City Life Ins. Co. v. Neverve,* 133 Neb. 29, 274 N. W. 390.

The eight beneficiaries never had possession of the bonds. Their beneficial interests were evidenced by the certificates of participation in which the legal title to the bonds and the mortgage was retained in the trustee for the purpose of collecting the debt and distributing the proceeds of the paper among the beneficiaries. The evidence makes it perfectly clear that the beneficiaries held their interests subject to the power of the trustee to receive payment and in default thereof to foreclose the mortgage, and that mortgagors were obligated by solemn contracts in writing to pay their debt to the mortgagee or to the trustee. The authority of mortgagee and original trustee to receive payment and to enforce collection in the event of default was transmitted to the successor-trustee. The latter exercised that authority in the foreclosure proceeding. The beneficiaries confided in and trusted the two now bankrupt corporations and their officers. Mortgagors, as directed by

their written agreements, paid to the Lincoln Trust Company $8,000 on the original debt. They also paid from the fire-insurance fund $1,872.50 credited on the bonds. The entire insurance fund was on the same footing and should have been so credited. The payment of $7,490 was a partial payment only and did not confer on mortgagors the right to demand the surrender of the bonds or the possession thereof as paid. Mortgagors had no part in any negligence or misappropriation by which the beneficiaries were defrauded. George C. Maryott, the principal mortgagor, testified that the names of the beneficiaries were unknown to him and that he never had any dealings with any of them. He made partial payment at the place and to the mortgagee or trustee appointed in his written obligations. The evidence and the rules of equity will admit of no other conclusion. There is evidence, however, that mortgagors were indebted to the same payee or trustee on other paper secured by mortgage, but the necessary conclusion from the record is that the transactions relating to the fire-insurance fund were directed to a partial payment of the debt secured by the mortgage in controversy. Notice that the payments made were authorized was communicated to the beneficiaries by certificates of participation in their own hands. By permitting their trustee to retain possession of the bonds with authority to receive payment for them, they made the loss of which they complain possible. In equity they must bear it, since mortgagors were not negligent or otherwise at fault.

Having reached the conclusion that defendants made the payment pleaded by them in their answer, as found by the district court, the discussion of other questions argued on appeal becomes unnecessary.

AFFIRMED.