ADLER *v.* CITY OF HOT SPRINGS.

4-7744                                              190 S. W. 2d 528

Opinion delivered November 26, 1945.

C. *Floyd Huff, Jr., House, Moses & Holmes, W. Horace Jewel,* for appellant.

*Wootton, Land & Matthews* and *Jay M. Rowland,* for appellee.

McFADDIN, J.   This appeal grows out of an attempt by the appellant, Jack Adler, to collect the principal and accumulated interest on a bearer bond for $1,000, exe-cuted by the Hot Springs Water Co. on July 1, 1909, and due thirty years thereafter.

Appellant filed this suit on June 13, 1944, (18 days short of the period of limitation) naming as defendants the City of Hot Springs, Arkansas, and also the Hot Springs Water Co., a dissolved corporation. The Hot Springs Utilities Co. and Gus B. Walton, trustee, were permitted to intervene on a showing of liability for payment of any judgment rendered on the bond sued on. These interveners denied the valid issuance of the bond, and pleaded that it had been fully satisfied. They also cross-complained against the Central Arkansas Public Service Corp. for any judgment the interveners might be required to pay in this suit. The Central Arkansas Public Service Corp., by answer, made the same defenses against the bond as the interveners, and also pleaded laches. The Garland chancery court, after hearing the evidence, rendered its decree, dismissing the complaint of the plaintiff, and he has appealed.

At the outset, we point out that Arkansas adopted the Uniform Negotiable Instruments Law by Act No. 81 of 1913 (now found in § 10152, *et seq.,* Pope's Digest). Section 195 of the Uniform Negotiable Instruments Law is now § 10157 of Pope's Digest, and reads:

"The provisions of this act do not apply to the negotiable instruments made and delivered prior to the taking effect hereof."

The bond herein sued on is dated July 1, 1909, and was certified by the trustee, and delivered to the Hot Springs Water Co. in 1909. Therefore, the provisions of the Uniform Negotiable Instruments Law have no application to this case.

Stated chronologically, the facts herein are:

1. On July 1, 1909, the Hot Springs Water Co. (hereinafter called "Water Company") was a public utility owning and operating the water works system of Hot Springs, Arkansas; and already had outstanding $500,000 in its first mortgage 5 per cent. bonds. On July 1, 1909, the Water Company executed its deed of trust to the Commonwealth Trust Co. of St. Louis, Missouri (hereinafter called "Commonwealth"), to secure an additional bond issue of $1,000,000. These bonds were to be 6 per cent. first mortgage refunding bonds, payable to bearer, and to consist of 1,000 serially numbered coupon bonds, each for $1,000, and each to mature thirty years from date, with interest payable semi-annually as evidenced by attached coupons. These refunding bonds were to be certified by Commonwealth, as trustee, and to be issued when needed to retire the 5 per cent. first mortgage bonds, and also to provide additional funds for the water company. The bond here sued on is No. 216 of these first mortgage 6 per cent. refunding bonds. We will later set out some of the pertinent provisions of this bond, as well as of the deed of trust securing the bond. The decision herein will largely turn on the language of the bond and the deed of trust.

2. The bond, No. 216, here sued on was certified by the trustee, and was delivered to the Water Company in 1909, and in 1913 was surrendered by the Water Company to Commonwealth for cancellation.

3. On March 4, 1913, Commonwealth executed its power of attorney to the clerk of the circuit court of Garland county, Arkansas, authorizing him to satisfy of record the said deed of trust from the Hot Springs Water Co. to Commonwealth, dated July 1, 1909, and being the deed of trust securing the bond No. 216 here sued on.

The power of attorney was duly executed, acknowledged and delivered, and filed for record in the office of the circuit clerk and recorder in and for Garland county, Arkansas, on March 6, 1913, and duly recorded in Record Book 75 at page 583 of the records and deeds and mortgages of Garland county, Arkansas. Under that power of attorney, the clerk of the Garland circuit court duly satisfied the deed of trust by marginal endorsement on March 6, 1913.

4. The properties of the Water Company, in the intervening years from 1913 to 1943, passed through a series of ownerships, to-wit: Federal Light & Traction Co., Central Arkansas Public Service Corp., Gus B. Walton, Trustee, and Hot Springs Utilities Co. On October 11, 1943, the City of Hot Springs acquired the properties, and is now operating the same as a municipal plant. During all the years no demand was ever made by anyone for the payment of this bond No. 216, until appellant's attorney made demand on the City of Hot Springs, shortly before the filing of this suit. All of the coupons from July 1, 1920, to maturity are still attached to the bond No. 216. The records of the Water Company were destroyed in a fire in 1913.

5. At the trial of this cause in the chancery court the bond sued on was introduced; and, by stipulation, plaintiff's attorney was permitted to testify as to plaintiff's "ownership of the bond and how plaintiff came into possession of same, which stipulation is entered into due to absence of the plaintiff who resides in St. Louis, Missouri." Under that stipulation plaintiff's attorney testified "my client came in possession of the bond, which is a bearer bond, from his deceased father. The bond had only recently been discovered in a prayer book belonging to the plaintiff's father during his lifetime." The above quotation is the only explanation of where the bond might have been from 1913 to the filing of the suit, or how the plaintiff acquired the bond.

In the briefs, the following questions are discussed:

(a) whether the bond in question was ever validly delivered by the Water Company;

(b) whether the records of Commonwealth are admissible under the ancient documents rule; and

(c) whether the plaintiff is barred by laches.

We find it unnecessary to consider any of these questions, because, from the admittedly competent evidence, it is shown that the bond was satisfied by the trustee; and we hold that under the provisions of the deed of trust in this case, the satisfaction by the trustee was satisfaction by the bondholder. We elucidate:

I. *The Bond Made Apt and Sufficient Reference to All the Provisions Contained in the Deed of Trust.* The bond sued on contained on its face this language, *inter alia*:

". . . as provided in the said mortgage or deed of trust, securing the same, and reference is made thereto for a description of the mortgaged premises and the terms and conditions subject to which the said bonds are issued, with like effect as if said instrument were recited herein at length."

If it requires any citation of authorities to sustain the statement, that this language was sufficient to charge the holder of the bond with notice of all the provisions contained in the deed of trust, then the cases and treatises mentioned in the next section of this opinion are such authorities.

II. *The Deed of Trust in This Case Made the Trustee the Agent of the Bondholder to Receive Satisfaction and Issue Receipt and Release.* The deed of trust securing the first mortgage refunding bonds (of which bond No. 216 here sued on was one) was dated July 1, 1909. By its terms the Water Company transferred all of its properties to Commonwealth to secure the bond issue. The deed of trust is quite lengthy, but some of its salient provisions are here summarized (with references in each instance to the article and section in the deed of trust), to-wit:

1. No bond was valid until authenticated by the certification of the trustee endorsed on the bond, "and

such authentication shall be conclusive evidence that every bond which it has endorsed is duly issued  . . ." (Art. I, § 2.)

2. The trustee was also the registrar and transfer agent of the bonds, in case any bondholder desired to have a bearer bond made a registered owner bond. (Art. II, § 1.) (The bond, No. 216, was always a bearer bond.)

3. In case any mortgaged property should be destroyed by fire and rebuilding be not undertaken, then the insurance money "shall be paid over to the trustee . . ." (Art. VI, § 2.)

4. The trustee had authority to release from the lien of the deed of trust any property of the Water Company, "provided  . . .  bonds of the issue hereby secured and  . . .  equal in amount to the value of the property released, shall be delivered to the trustee and be canceled at the time of the execution of any such release." (Art. VIII, § 1.)

5. If the Water Company and the trustee could not agree as to the value of the property sought to be released, then they might arbitrate by each appointing an arbitrator. (Art. VII, § 2.)

6. The execution by the trustee of any release of any property should "at all times be deemed and taken as conclusive evidence that the trustee was fully warranted in executing such relase, and the validity thereof shall not thereafter be questioned. . . ." (Art. VII, § 3.)

7. Any of the bonds might be called and redeemed by the trustee at any time prior to maturity. (Art. IX, § 1.)

8. ". . . in case, at the time named for redemption of any bonds, if the funds be deposited as aforesaid, and if such bonds be not presented, the trustee shall hold the funds provided for the redemption thereof as special deposit for and on behalf of the owner or holder of the bonds called for redemption, and such bonds and all unpaid coupons thereto belonging and returned on and

after the day named for redemption shall be null and void and not any longer secured by the lien. . . ." (Art. IX, § 4.)

9. In event of any default, the trustee had the right in its own name to institute and conduct suit on the deed of trust. (Art. X, § 4.)

10. "No bondholder . . . shall have the right to institute any suit at law or in equity, for the collection of the principal or interest of any of the bonds secured hereby . . . except in case of the refusal or neglect of the trustee to act . . ." (Art. XI.)

11. The deed of trust was to become void whenever ". . . sufficient money to pay all such indebtedness shall have been deposited with the trustee for and on account of the persons entitled thereto and payable to them on the surrender and negotiation of their respective evidences thereto; and thereupon, and upon such payment or deposit being made, the trustee, upon request of the mortgagor, shall . . ." execute a release and make satisfaction of the deed of trust. (Art. XII, § 1.)

There are other recitals of similar import in the deed of trust; but from those listed, we think it clear that by the terms of the deed of trust, the trustee was the agent of the bondholders to receive satisfaction and issue receipt and release. There are many well considered cases from other jurisdictions, each of which has reached the conclusion that when a deed of trust contained provisions substantially the same as the one here, then the trustee became the agent of the bondholders. Some of these cases are: *Morley* v. *University of Detroit*—first opinion, 263 Mich. 126, 248 N. W. 570, 90 A. L. R. 464; second opinion, 269 Mich. 216, 256 N. W. 861, 96 A. L. R. 1217; *Commercial Credit Co.* v. *Seymour National Bank,* 105 Ind. App. 524, 15 N. E. 2d 118; *Manchester* v. *Sullivan,* 112 Conn. 223, 152 At. 134; *The Inn at South Palm Beach* v. *Jacobs,* 115 Fla. 486, 155 Southern 835; *Hall* v. *Goldsworthy,* 136 Kans. 247, 14 Pac. 2d 659; In re *Church's Will, First Wisconsin Trust Co.,* v. *Schultz,* 221 Wis. 472, 266 N. W. 210; *Fidelity & Columbia Trust Co.* v. *Schmidt,*

245 Ky. 432, 53 S. W. 2d 713; *First Trust Co.* v. *Maryott,* 135 Neb. 679, 283 N. W. 518; *First National Bank of Portland* v. *Stretcher,* 169 Ore. 532, 129 Pac. 2d 830.

In *Hall* v. *Goldsworthy, supra,* the Supreme Court of Kansas, in explaining why the trustee was the agent of the bondholder, said:

". . . In other words, it is contended that the payment of the money to the trust company did not constitute a payment on the indebtedness but was merely a deposit. The solution to this question is found in the construction of the instrument. The note is made payable at the office of the trust company. The names of the bondholders are not disclosed. The company is the trustee. The trustee has the power, on payment of the indebtedness, to release and discharge the mortgage lien, and, in event of default, to maintain an action to foreclose the mortgage. It is more than a depository. It is in fact the plaintiff in this case. The bondholders are not parties. They are relying upon the terms of the instrument vesting the trustee with the power to enforce the obligation. It hardly seems consistent to permit the trustee to maintain an action to enforce collection and at the same time charge the mortgagor with the failure of the trustee to distribute the fund to the bondholders. In the case of *McCormick* v. *Johnson,* 134 Kan. 153, 4 P. 2d 421, this court held that the payment of the fund to the trustee relieved the mortgagor of the responsibility of the distribution of the fund. While the language of the trust deed in the case cited is much stronger with reference to payment than the language contained in the trust deed under consideration, yet there is a similarity in the two instruments, and they attempt to reach the same end. It appears that the plain intent of the parties was to vest the trustee with the power to receive payment and to make distribution thereof. Under such circumstances we are compelled to hold that the payment of the money to the trustee relieved the mortgagor from further responsibility, and that the bondholders must look to the trustee for the distribution of the fund."

The Annotations in 90 A. L. R. 467 and in 96 A. L. R. 1233 are on the question, whether the trustee in receiving payments is the agent of the mortgagor or the bond-holder and in the last-mentioned annotation it is stated:

"The cases herein cited serve further to emphasize that the question whether a trustee in a mortgage securing bonds is the agent of the bondholders to receive payment depends upon the terms of the particular bonds and of the trust instrument in question, as well as upon the time and manner in which the particular funds reached the hands of the trustee."

In Jones on *Bonds and Bond Securities,* 4th Edition, § 766, in discussing whether the trustee is the agent of the mortgagor or the bondholder, the matter is tersely stated:

". . . In such cases the question resolves itself into one of agency, and this, in turn, depends upon the stipulations under which the bonds were issued. If, in a particular case, the trustee was the agent of bondholders to receive payment, moneys deposited with it by the corporation for that purpose, over which the corporation lost the right of control, would belong to the bondholders and its receipt by the trustee would constitute payment."

There are also general discussions of this question in 46 *Yale Law Journal,* 759 and 39 *Michigan Law Review,* 94.

Without citing further authorities, we conclude that in the case at bar the recitals in the deed of trust constituted the trustee, Commonwealth Trust Co., the agent of the bondholders to receive satisfaction and issue receipts therefor, and to release the deed of trust when the obligations had been satisfied.

III. *The Trustee has Received Satisfaction of the Bond Sued on and has Issued Receipt and Release.* The law is well settled that payment to a duly authorized agent is payment to the principal. *American Freehold Mortgage Co.* v. *Wood,* 140 Ark. 452, 215 S. W. 696 . See, also, 2 C. J. S., Agency, § 107, p. 1270, and 40 Am. Juris.

127, and 40 Am. Juris. 728, where, in discussing payment, the rule is stated:

". . . But if made to an agent having express authority to receive the particular payment, the obligation is discharged; and the debtor is entitled to his credit without tracing the fund through the hands of the agent and into those of his principal."

Having reached the conclusion—as we have—that the trustee was the agent of the bondholder to receive satisfaction and issue release, it necessarily follows that the payment and satisfaction made to the agent had the same effect as though made to the bondholder.

That the Commonwealth Trust Co. did receive full payment and satisfaction of the bond here sued on is clearly established by the recitals in the power of attorney executed by the Commonwealth Trust Co. on March 4, 1913, in which instrument the trustee empowered the clerk of the circuit court of Garland county, Arkansas, to satisfy in full the deed of trust which secured the entire bond issue, of which the bond here sued on was one. In the said power of attorney the trustee recited that all of the bonds (numbered 1-1,000, inclusive) had been delivered to it and satisfied and canceled; and acknowledged "payment and satisfaction in full of the said deed of trust." Acting under that power of attorney, the clerk of the circuit court of Garland county made a satisfacfaction on the margin of the record where the deed of trust was recorded, which satisfaction reads as follows:

"By virtue of power of attorney this day filed for record and duly recorded in Volume 75 at page 583, I hereby acknowledge full payment and satisfaction of the within deed of trust of July 1, 1909, of Hot Springs Water Company to Commonwealth Trust Company, and hereby release and discharge the property herein described from the consideration of this mortgage or deed of trust. This March 6, 1913. A. G. Sullenberger, Clerk."

The power of attorney has been duly of record in Garland county since March 6, 1913. We, therefore, hold

410

that the effect of this instrument by the trustee—in the absence of fraud, and none is alleged—is to establish that the bond herein sued on was paid on March 4, 1913, since the payment to the trustee under the provisions of the deed of trust here sued on was payment to the bondholder. The chancery court was correct in denying relief to the plaintiff—appellant here—and the decree is affirmed.